2000 ME 126

**SPRINGFIELD TERMINAL RAILWAY COMPANY**

v.

**DEPARTMENT OF TRANSPORTATION.**

Supreme Judicial Court of Maine.

Argued April 3, 2000.
Decided June 30, 2000.

Thad B. Zmistowski, Eaton Peabody Bradford & Veague, P.A., Bangor, for plaintiff.

Andrew Ketterer, Attorney General, Christopher C. Jernigan, Asst. Attorney General (orally), James E. Smith, Chief Counsel, Department of Transportation, Augusta, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Springfield Terminal Railway Company appeals from a judgment entered in the Superior Court (Kennebec County, *Studstrup, J.*) in favor of the Department of Transportation affirming the Department's decision to refuse to produce thirteen documents pursuant to the Freedom of Access Act. *See* 1 M.R.S.A. § 408 (1989).[1] Springfield argues that the trial court erred in deciding that those documents were not "public records" as defined by 1 M.R.S.A. § 402(3) (Supp.1999).[2] Finding no error, we affirm the judgment.

[¶ 2] Prior to 1991, Guilford Transportation Industries, Inc., the parent company of Springfield, owned a 19 mile stretch of railroad track between Brunswick and

---

1. Title 1, section 408 provides, in part:
   Except as otherwise provided by statute, every person shall have the right to inspect and copy any public record during the regular business hours of the custodian or location of such record.
   1 M.R.S.A. § 408 (1989).

2. Title 1, section 402(3) provides, in part:
   The term "public records" means any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained ... that is in the possession or custody of an agency or public official of this State ... and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business, except:
   A. Records that have been designated confidential by statute;
   B. Records that would be within the scope of a privilege against discovery or use as evidence recognized by the courts of this State in civil or criminal trials if the records or inspection thereof were sought in the course of a court proceeding.
   1 M.R.S.A. § 402(3) (Supp.1999).

Lewiston known as the "Lewiston Lower Road" branch. In 1991, the State purchased from Guilford the right of way and track materials on the 9.4 mile segment of the track between Brunswick and Lisbon Falls. Guilford retained a rail freight easement which apparently gave it an exclusive right to carry freight on that segment of track.

[¶ 3] In June of 1997, a representative of Grimmel Industries, a scrap metal business located in Topsham, contacted the Department seeking its assistance in obtaining rail service. Grimmel was located along the State-owned portion of the track, and Guilford had refused to provide the rail service Grimmel had requested. The Department began negotiations with Guilford with the goal of providing rail freight service along the Lewiston Lower Road. Ultimately, the parties agreed that (1) Guilford would abandon the entire Lewiston Lower Road, (2) the Department and Guilford would negotiate for the State's purchase of the portion of line not owned by the State, and (3) the State would spend funds to rehabilitate and reopen the line. Though the dates are not made clear by the testimony, it appears that this agreement was made orally in early January of 1998.

[¶ 4] In June of 1998, Guilford filed for abandonment of the Lewiston Lower Road with the Surface Transportation Board (STB), a federal agency. Immediately thereafter, the Department began to appraise the segment of the line still owned by Guilford so the parties could negotiate a price for its sale. In early February 1999, however, Guilford "postponed indefinitely" any negotiations regarding the sale of its track.

[¶ 5] On August 31, 1999, Guilford submitted a motion to the STB to withdraw its abandonment of the Lewiston Lower Road. The Department has opposed that motion, which was still pending before the STB at the time of this appeal. The Department also continued with its $250,000 plan to rehabilitate the track that it owned to allow a carrier other than Guilford to provide service along the Lewiston Lower Road. The Department also intends, sometime in the future, to construct a short segment of track to connect the Lewiston Lower Road tracks with the St. Lawrence & Atlantic Railroad Company tracks located in Lewiston to increase the efficiency of Maine's rail infrastructure.

[¶ 6] By letter dated June 4, 1999, Springfield requested, pursuant to 1 M.R.S.A. § 408 (1989), that the Department make available for inspection various records pertaining to the Department's involvement in the Lewiston Lower Road project. The Department complied with that request but withheld 13 documents on the basis that they were subject to attorney client privilege, constituted attorney work product, and/or were not public records as defined by 1 M.R.S.A. § 402 (Supp.1999). The Department described the withheld documents as follows:

1. E-mail inquiry to counsel;

2. Right of Way records;

3. Letter by Chief Counsel;

4. Business materials prepared for the Legislature;

5. Two Memorandums concerning Right of Way;

6. Hand written note on Right of Way issues;

7. Inquiry memo to Chief Counsel;

8. Memo to Chief Counsel;

9. Memo from Chief Counsel to Office of Freight Transportation;

10. Memo from counsel;

11. Memo from counsel;

12. Memo from counsel;

13. Memo from counsel.[3]

---

3. Because the Department made document 4 available to Springfield in September of 1999, that document is no longer at issue.

[¶ 7] In June of 1999, Springfield brought this action seeking disclosure of the withheld documents. *See* 1 M.R.S.A. § 409 (Supp.1999) (allowing parties who are denied access to records by an agency to appeal the denial to the Superior Court). By agreement of counsel, the Department submitted the withheld documents to the Superior Court for in camera inspection. After examining the documents and considering the briefs of the parties, the Superior Court held that documents 2, 5, and 6 were not public records because they were records relating to engineering costs of projects that were to be put out to bid, making them confidential pursuant to 23 M.R.S.A. § 63 (1992). *See* 1 M.R.S.A. § 402(3)(A) (Supp.1999). The court also held that documents 1, 3, and 7 through 13 were work product created in anticipation of litigation, the litigation being the Department's opposition, in the STB abandonment proceedings, to Guilford's motion to withdraw its proposed abandonment of the Lewiston Lower Road. *See* 1 M.R.S.A. § 402(3)(B) (Supp. 1999). Finally, the court found that documents 6, 7, and 8 were also subject to the attorney-client privilege. Springfield appealed to this Court.

## I.

[¶ 8] We must construe the provisions of the Freedom of Access Act to determine if certain documents are "public records" as defined by the Act. Statutory construction being an issue of law, we review the trial court's construction of the Act de novo. *See Doe v. Department of Mental Health,* 1997 ME 195, ¶ 8, 699 A.2d 422, 424. We construe statutes by applying the plain meaning of the statute in an attempt to give effect to the Legislature's intent. *See id.* "In addition, because the Freedom of Access Act mandates that its provisions 'shall be liberally construed,'" *id.* (quoting 1 M.R.S.A. § 401 (1989)), " 'we must interpret strictly any statutory exceptions to its requirements,' " *id.* (quoting

*Bangor Publ'g Co. v. City of Bangor,* 544 A.2d 733, 736 (Me.1988)).

[¶ 9] The burden of proof falls on the agency to establish "just and proper cause" for the denial of a Freedom of Access Act request. *See* 1 M.R.S.A. § 409 (1989) (stating that, on appeal to the Superior Court, the court must enter an order for disclosure if it determines "denial was not for just and proper cause"); *Boyle v. Division of Community Servs.,* 592 A.2d 489, 490 (Me.1991) (implying in its analysis that the burden was on the agency).

### A. The Documents Numbered 2, 5, and 6.

[¶ 10] The Freedom of Access Act protects from disclosure "[r]ecords that have been designated confidential by statute." *See* 1 M.R.S.A. § 402(3)(A) (Supp. 1999). The trial court concluded that 23 M.R.S.A. § 63 (1992) designated documents 2, 5, and 6 as confidential. Title 23, section 63 provides, in part:

> The records and correspondence of the right-of-way division of the department relating to negotiations for and appraisals of property, pending the final settlement for all claims on the project to which they relate and the records and data of the said department relating to engineering estimates of costs on projects to be put out to bid, shall be confidential, and shall not be open for public inspection.

23 M.R.S.A. § 63.

[¶ 11] Having reviewed these documents in camera, we agree with the Superior Court's conclusion that they are protected from disclosure by 23 M.R.S.A. § 63. Document 2 consists of notes regarding appraisals of property and engineering estimates of costs on projects relating to the Lewiston Lower Road. Documents 5 and 6 also relate, in their entirety, to property appraisals regarding the Lewiston Lower Road project. Because all three docu-

ments relate to property appraisals and engineering costs, they are confidential.[4]

**B. The Documents Numbered 1, 3, and 7–13.**

[¶ 12] The Department contends, and the trial court held, that documents 1, 3, and 7–13 are protected from disclosure by the work product doctrine. Springfield argues that the documents are not protected because they were not prepared in anticipation of litigation. We agree with the Department.

[¶ 13] Documents which "would be within the scope of a privilege against discovery" are not public records subject to disclosure. *See* 1 M.R.S.A. § 402(3)(B) (Supp.1999). One such privilege is the work product doctrine.

> [A] party may obtain discovery of documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

M.R. Civ. P. 26(b)(3).

[¶ 14] In the few cases in which this issue has been addressed, we have conducted our own in camera review of the challenged material to determine whether the trial court committed legal error in determining whether a document is pro-

tected work product. *See Boccaleri v. Maine Med. Ctr.,* 534 A.2d 671, 672–73 (Me.1987); *New England Tel. & Tel. Co. v. Public Utils. Comm'n,* 448 A.2d 272, 283 (Me.1982).

[¶ 15] Rule 26(b)(3), which is identical to Fed.R.Civ.P. 26(b)(3), contemplates a preliminary analysis by the trial court to determine whether the party seeking to protect the material from disclosure has met its burden of establishing that the document is work product. *See* M.R. Civ. P. 26(b)(3). If that burden is met, the burden then shifts to the party seeking disclosure to demonstrate that it has substantial need of the materials and cannot obtain the document otherwise without undue hardship. *See id.* Finally, even if the party seeking disclosure can establish need and hardship, documents, or parts of documents, containing "mental impressions, conclusions, opinions, or legal theories of an attorney" shall not be disclosed. *See id.*

[¶ 16] A document is protected as work product only if it was created because of the party's subjective anticipation of future litigation. *See* M.R. Civ. P. 26(b)(3); *Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1260 (3d Cir.1993) (holding that "[o]nly by looking to the state of mind of the party preparing the document or ... the party ordering the preparation of a document" can the court determine whether the document was prepared in anticipation of litigation). Yet, subjective belief alone is not enough. The preparer's anticipation of litigation must also be "objectively reasonable." *See Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d at 1260.

[¶ 17] Moreover, the document must also be of a type that can be considered work product. "A party generally

---

4. While we have held that protected information can be excised from a document to allow that document to be disclosed, *see Guy Gannett Publ'g Co. v. University of Me.,* 555 A.2d 470, 471–72 (Me.1989), documents 2, 5, and 6 contain only protected information. Accordingly, the trial court correctly concluded that the Department need not disclose any portion of those documents.

must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996). " '[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.' "[5] *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir.1979) (quoting 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2024, at 198 (1970)), *quoted in Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d at 1260; *see also State Farm Fire & Cas. Co. v. Perrigan*, 102 F.R.D. 235, 238 (W.D.Va.1984).

[¶ 18] Finally, the test should be applied in light of the purpose of the rule, which is to " 'promote the adversary system by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation.' " *See Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d at 1265 (Nygaard, J., concurring) (quoting *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir.1991)) (alterations omitted). "[O]ur adversary system depends on the effective assistance of lawyers, fostered by the privacy of communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client." *National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992). Moreover, it is not just the work of the attorney that is protected. Also protected are documents created by the party or the party's representatives, as long as they are created in anticipation of litigation. *See* M.R. Civ. P. 26(b)(3).

[¶ 19] Some courts have found that litigation need only be " 'identifiable' in order to trigger work product protection." *See Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d at 1260 (quoting 4 James W. Moore et al., *Moore's Federal Practice* ¶ 26.64[2], at 26–352 (1991)). "A remote possibility of litigation is insufficient," however, "and some courts even have found the likelihood of litigation to be a deficient showing, requiring a substantial probability with commencement imminent." 4 Moore *supra*, ¶ 26.64[2], at 26–353 (1987). Because the purpose of the rule is to protect those communications that were legitimately made in anticipation of trial, the party seeking to prevent disclosure should be able to demonstrate that its expectation of litigation is reasonable. A good formulation of this reasonableness test can be found in *National Union Fire Insurance:*

> Our determination in *Harriman* rested on the proposition that where a party's business is to prepare for litigation, the nature of the party's business acts as a proxy for a factual determination that the documents were prepared in anticipation of litigation. Accordingly, in that case involving a party whose business is to prepare for litigation, we rejected the test we adopt in this case because "[t]hat approach will often involve the motion justice in a complex and time-consuming procedure that will require extensive factfinding ... and would ... further delay ... the litigation process." *See id.* at 1033. In most cases, however, including the case at bar, the parties are not in the business of preparing for litigation, and resort to factfinding is essential to determine whether the documents at issue were prepared in anticipation of litigation.

---

**5.** The test we adopt in this case does not affect the procedural rule we adopted in *Harriman v. Maddocks*, 518 A.2d 1027 (Me.1986). In *Harriman*, we were called on to decide whether a claims adjuster's file was prepared in anticipation of litigation, and we held that " 'a document prepared in the regular course of business may be prepared in anticipation of litigation when the party's business is to prepare for litigation.' " *Id.* at 1034 (quoting *Ashmead v. Harris*, 336 N.W.2d 197, 200 (Iowa 1983)). We recognized that such a rule "will almost always result in a preliminary finding that the claims file documents [of an insurance adjuster] were prepared in anticipation of litigation," but we concluded that because M.R. Civ. P. 26(b)(3) allowed discovery of those documents upon a showing of substantial need and hardship, our determination was "consonant with both the language and spirit of the rule." *See id.*

The document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation.

*National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d at 984.

### 1. Documents 1, 7, and 8

[¶ 20] Documents 1, 7, and 8 are communications from Department officials to its chief counsel regarding possible eminent domain proceedings. They were drafted after Guilford orally agreed to abandon the Lower Lewiston Road, and each document was created in anticipation of future eminent domain litigation. Indeed, they were created for the purpose of determining whether eminent domain proceedings could be brought at all.[6]

[¶ 21] When the Department sought advice regarding whether or not the law allowed it to bring an eminent domain proceeding against Guilford, it adequately identified the prospect that litigation would be necessary to restore rail service to the Lewiston Lower Road. That it hoped that legal action would not be necessary does nothing to alter the fact that the Department's belief in the necessity of a legal solution was strong enough to submit the idea to outside counsel.

[¶ 22] Moreover, the Department's anticipation of litigation was reasonable. The key factor to consider in making that analysis is the lack of any binding written agreement for the sale of Guilford's interest in the Lewiston Lower Road. While Guilford orally agreed to abandon the line and to negotiate with the Department, it was in no way bound to do so. Consequently, it was reasonable for the Department to expect that the negotiations would be unsuccessful and that it would likely be forced to resort to any eminent domain power it might have in order to acquire the property. Because the Department prepared documents 1, 7, and 8 in reasonable anticipation of litigation, we conclude that those documents are protected from disclosure by the work product doctrine.

### 2. Documents 9–13

[¶ 23] Documents 9–13 are authored by the Department's chief counsel and outside counsel, and they are responses to the requests for legal advice contained in Document Nos. 1, 7, and 8. Not only do those documents contain advice regarding the mechanics and possible outcomes of various forms of future litigation, they also contain, almost exclusively, the "mental impressions, conclusions, opinions, or legal theories of an attorney" and are, therefore, protected from disclosure by M.R. Civ. P. 26(b)(3).

### 3. Document No. 3

[¶ 24] Document 3 is a letter from the Department's chief counsel to outside counsel seeking advice on yet another legal alternative to a negotiated solution with Springfield. Accordingly, as with documents 1, 7, and 8, this communication is protected work product.[7]

The entry is:

Judgment affirmed.

---

6. Though the trial court found that the documents were prepared in anticipation of future proceedings before the STB, the documents themselves make it clear that they were prepared in anticipation of future eminent domain proceedings.

7. Because we conclude that the documents are protected from disclosure by either 23 M.R.S.A. § 63 (1992) or the work product doctrine, we do not address the Department's alternative arguments for non-disclosure.