STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: AP-07-40.
                                                  RAC -CUM- 8/21/2007

BLETHEN MAINE NEWSPAPERS INC

                 Plaintiff,
                                                  **ORDER ON PLAINTIFF'S**
       v.                                         **APPEAL FROM DENIAL OF**
                                                  **ACCESS TO PUBLIC**
                                                  **PROCEEDINGS PURSUANT**
                                                  **TO 1 M.R.S.A. § 409 AND**
PORTLAND SCHOOL COMMITTEE,                        **M.R. Civ. P 80B**
                 Defendant.


       This matter comes before the Court on an appeal under Maine's Freedom

of Access Act (1 M.R.S. §§401-410 (2007)) by Plaintiff Blethen Maine Newspapers,

Inc. d/b/a Portland Press Herald and Maine Sunday Telegram ("Portland Press

Herald") pursuant to M.R.Civ.P. 80B, seeking preliminary and permanent

injunctive relief, a declaratory judgment and requesting an order compelling

disclosure of any public records relating to the executive session held on July 25,

2007 against Defendant, Portland School Committee ("School Committee"). This

appeal was the subject of a testimonial hearing on August 17, 2007.

                              **BACKGROUND**

       The facts of this case are largely undisputed. On July 25, 2007 the School

Committee held a forty-five minute, closed, executive session ("Executive

Session"). The agenda for the Executive Session stated that the session was to

                                      1

"consult with counsel and consider the duties of central office staff with respect to the department's financial management."[1]

The School Committee asserts that only four documents were generated at the Executive Session: 1) The "Superintendent's Outline," which is a two page document outlining Superintendent O'Connor's management style; 2) the personal notes of Committee Member Ellen Alcorn, 3) the personal notes of Committee Member Lori Gramlich; and 4) the notes of School Committee Attorney Pringle.

The day following the Executive Session, the Portland Press Herald requested, through counsel, all public records regarding the Executive Session. The School Committee responded by agreeing to disclose any "appropriate documents . . .within a reasonable period of time." On July 30, 2007, the School Committee provided the Portland Press Herald with "a written description of the notes" taken at the Executive Session "and confirmation that [the notes] would not be disclosed."[2] On or about July 30, 2007, Richard Paulson, Jr., finance director of the Portland School Department, submitted his resignation.

On July 27, 2007, two days after the Executive Session, one of the School Committee members posted a comment on the Portland Press Herald website which indicated to the Portland Press Herald that discussions during the Executive Session were unlawful under the FOAA. [3] The Portland Press Herald

---

[1] The School Committee reports that eight School Committee members were present at the Executive Session as well as Attorney Pringle and three school administrators (Superintendent of Schools Mary Jo O'Connor, finance director Richard Paules, and Director of Human Resources, Joline Hart).

[2] The Portland Press Herald asserts the response came on July 31, 2007; however the date is not critical.

[3] School Committee member Benjamin Meiklejohn posted the following comment on the Portland Press Herald website: "Going into the most recent executive session, I would

had the School Committee served with a Complaint for Summary Appeal under the FOAA on July 31, 2007 seeking injunctive and declaratory relief as well as access to public records from the Executive Session, which was filed that day with this Court.

The Portland Press Herald contends that the School Committee held the Executive Session in direct contravention of the FOAA and that Portland School District budgetary issues were discussed during the Executive Session. They further argue that the School Committee has failed to meet its burden that the notes taken at the meeting fit within narrowly construed exceptions under the FOAA and therefore all documents must be disclosed as public records.

The School Committee contends that the Executive Session was permissible under the FOAA. They assert that, if the Executive Session was permissible, "all documents prepared for or during the meetings are not public records."[4] The School Committee further contends that any notes taken by committee members are personal notes, which are beyond the scope of public records as defined by the FOAA, and that notes taken by Attorney Pringle are excepted as the work product of the School Committee attorney.

Thus this Court is presented with two issues. First, was the Executive Session permissible under the FOAA because discussions in the Executive Session fell within a permitted deliberation as defined by 1 M.R.S.A. § 405(6)(A)

---

say that such a reasonable expectation [of damage to reputation or violation of a right to privacy] most certainly did exist. Having sat through it however, I no longer feel that said expectation exists, and would oppose future motions to enter executive session unless new factors present such a 'reasonable expectation.'"

[4] The Portland Press Herald argues that the definition of "public record" should be independent of the form of meeting for which the record is prepared. To do otherwise, it is argued, would create an "implied exception" under the FOAA, contrary to it's stated purpose.

or (E)? Second, are the notes that were taken at the Executive Session by School Committee members and Attorney Pringle privileged or excepted under 1 M.R.S.A. § 402(3)?

## DISCUSSION

I. Under 1 M.R.S.A. §§ 401-410 ("FOAA"), was the Executive Session held by the School Committee a permissible deliberation as defined by 1 M.R.S.A. § 405(6) (A) or (E)?

The FOAA was enacted to ensure that public proceedings[5] be conducted openly with full public access to the meetings and to public records of those meetings. 1 M.R.S. § 403 (2007). The intent of the legislature was to facilitate "the conduct of the people's business." 1 M.R.S. § 401 (2007). The Law Court articulated the FOAA's "basic purpose" as the protection of "the public's right to obtain information about their government and governmental policies, to know what their government is doing, and to prevent the mischief of arbitrary and self-serving governmental action." *Cook v. Lisbon Sch. Comm.*, 682 A.2d 672, 677 (Me. 1996) (citing 1 M.R.S.A. § 401 (1989)). In furtherance of that intent the legislature declared that the FOAA "shall be liberally construed and applied to promote its underlying purposes and policies. . . ." 1 M.R.S. § 401.

### a. Permitted Deliberations under the FOAA.

Narrow exceptions, called executive sessions, exist to this liberal public access policy. *See* 1 M.R.S. § 405 (2007). The executive sessions are specifically limited and may "not defeat the purposes of" the statute. 1 M.R.S. § 405(1). Moreover, the exceptions are to be strictly construed by the court. *Bangor Publ'g*

---

[5] Neither party contests that the School Committee meetings are within the scope of the FOAA.

4

*Co. v. City of Bangor*, 544 A.2d 733, 736 (Me. 1988). In addition, the legislature statutorily limited the executive sessions by subjecting them to specific procedures. *See* 1 M.R.S. § 405. For example, the content of an executive session must be stated in advance and the scope of the session may not exceed that stated content. 1 M.R.S. § 405(4) & (5). Further, the content is expressly limited to the matters set forth in Section 405(6) of the statute. *See* 1 M.R.S. § 405(6).

At issue in this case are exceptions set forth in sub-sections 405(6)(A) and (E). *Id.* Under Section 405(6)(A), an executive session may discuss the dismissal or resignation of a public employee, but that discussion can *only* occur in an executive session *if* "public discussion could be reasonably expected to cause damage to the reputation or the individual's right to privacy would be violated." 1 M.R.S. § 405(6)(A)(1) (emphasis added).

However, Section 405(6)(A) specifically states that subsection A *does not apply to discussions of a budget or budget proposal.* 1 M.R.S.A. § 405(6)(A). (emphasis added). The Law Court has recently reiterated that "[w]hen interpreting a statute, we accord its words their plain meaning." *Cyr v. Madawaska Sch. Dept.*, 2007 ME 28, ¶ 10, 916 A.2d 967, 970 (citing *Bangor Publ'g Co*, 544 A.2d at 736). "If the statute's meaning is clear, we do not look beyond its words, unless the result is illogical or absurd." *Id.* (*quoting S. Portland Police Patrol Ass'n v. City of S. Portland*, 2006 ME 55, ¶ 5, 896 A.2d 960, 963). Thus a permitted deliberation under §405(6) (A) would be any deliberation regarding personnel issues that the School Committee can show could reasonably be expected to damage the reputation of the individual discussed or invade that persons privacy but budgetary discussions are strictly prohibited.

5

Under Section 405(6)(E) an executive session may contain consultations with the agency's attorney where that consultation would fall within the attorney client privilege and public access to that knowledge would put the agency "at a substantial disadvantage." 1 M.R.S. § 405(6)(E). However, "the mere presence of an attorney cannot be used to circumvent the FOAA's open meeting requirement." *Underwood v. City of Presque Isle*, 1998 ME 166, ¶ 16, 715 A.2d 148, 153.

For example, the Law Court held that the scope of the attorney client privilege under Section 405(6) (E) included discussions with an attorney regarding legal rights and duties but specifically did not authorize deliberations on the merits of an issue. *Id.* ¶ 15, 715 A.2d. at 153. The *Underwood* Court considered the permissibility of deliberations of a town zoning board. *See Id.* While recognizing that it may be difficult for a public body to draw the line between permissible and impermissible deliberations, the Court took the opportunity to

> remind public boards and agencies of the Legislature's declaration in the Freedom of Access Act that 'their deliberations be conducted openly,' and that the Act 'be liberally construed . . . to promote its underlying purposes..'

*Id.* ¶ 16, 715 A.2d at 153 (*quoting* M.R.S.A. § 401). Thus the Law Court has construed section 405(6)(E) narrowly to permit deliberations with an attorney in executive session only regarding legal rights and duties, not the merits of the issues.

### b. Burden of Production under the FOAA.

With respect to burden of production, "[t]he party alleging a violation of the Act, [ ] has the burden of producing probative evidence before the Superior

6

Court sufficient to support a finding that the Act has been violated." *Chase v. Town of Machiasport*, 1998 ME 60, ¶9, 721 A.2d 636, 639. After the initial burden is met, the public body then has the burden to show that its executive session "complied with an exception to the FOAA's open meeting requirement." *Underwood*, 1998 ME 166, ¶ 19, 715 A.2d at 153. This Court will require disclosure if it finds that the "denial was not for just and proper cause." 1 M.R.S.A. §409(1).

In this case the Portland Press Herald presented evidence that a member of the School Committee posted information on the paper's website that questioned the validity of the Executive Session under the FOAA open meeting requirement. Thus the burden then shifted to the School Committee to show that the Executive Session was lawful under the FOAA.

At hearing, the School Committee presented testimony regarding deliberations in the Executive Session. Though this Court accepts that some of the deliberations were regarding personnel issues and thus permissible, it concludes that some of the deliberations were regarding the School Committee budget and were thus impermissible under the FOAA.

2. Are the Notes That Were Taken at the Executive Session by School Committee Members and the School Committee Attorney Public Records Within the Meaning of 1 M.R.S.A. § 402(3)?

As a general rule, under the FOAA, records of public proceedings should be open to public inspection. 1 M.R.S. §401. "Except as otherwise provided by statute, every person shall have the right to inspect and copy any public record during the regular business hours of the custodian or location of such record . . . . " 1 M.R.S. §408 (2007). Public Records are defined as:

Any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained, directly or after translation into a form susceptible of visual or aural comprehension, *that is in the possession or custody of* an agency *or public official* of this State or any of its political subdivisions *and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business. . . .*

1 M.R.S. §402(3). (emphasis added). Exceptions to the definition are listed in Section 402, with those relevant to this case being: A) "Records that have been designated confidential by statute; and B) Records that would be within the scope of a privilege against discovery or use as evidence recognized by the courts of this State in civil or criminal trials if the records or inspection thereof were sought in the course of a court proceeding. . . ." *Id.*

As noted above, these exceptions should be strictly construed, *Bangor Publ'g Co*, 544 A.2d at 736, in service to the FOAA's mandate of liberal construction, *see* 1 M.R.S. § 401. Should an exception under the FOAA apply, those portions of a public record that are deemed confidential may be redacted. *Cyr*, 2007 ME 28, ¶ 11, 916 A.2d at 970.

a. <u>Are Notes Prepared Solely for the Personal Use of School Committee Members Excepted From the Definition of Public Records Under the FOAA?</u>

The Law Court has not specifically ruled on this issue. It has stated, however, that:

In construing the term "public records" we "must look first and primarily at the language of the provision." It is apparent that the *legislature sought to avoid uncertainty by enacting a very broad, all-encompassing definition subject only to specific exceptions.* The statute was designed to avoid restrictive common law definitions of public records. It declares as a matter of public policy that records of

8

> public action shall be open to public inspection. It leaves little
> room for qualification or restriction.

*Wiggins v. McDevitt*, 473 A.2d 420, 422 (Me. 1984) (*quoting Moffett v. City of Portland*, 400 A.2d 340, 345 (Me. 1979))(emphasis added). In that case the Law Court considered a request for disclosure of personal copies of tax records held by a deputy sheriff. *Wiggins*, 473 A.2d at 420. The Court held that "[if] a tax return possessed by a public official contains information relating to the transaction of public business the return is a public record unless it falls within one of the statutory exceptions." *Id.* at 422. Similarly though not binding, the Superior Court deemed personal notes public records when they "exist to memorialize the content of any illegal portions of the executive session . . . " *Guy Gannet Publishing Co. v. City of Portland*, CUMSC- CV-92-858 (Me. Super. Ct., Cumb. Cty., Sep. 24, 1992) (Lipez, J.).

The School Committee asserts that records created "solely for the personal use of the School Committee members who took them . . . do not fall within the definition of 'public records'" under the FOAA. The Portland Press Herald counters that the School Committee has failed to innumerate an exception under the definition of "public record" and thus, given the legislative mandate of liberal construction, personal notes should not be excepted. This Court finds Plaintiff's argument more compelling.

The School Committee relies on case law from other jurisdictions in support of its argument, specifically the Federal Freedom of Information Act (FFOIA) and freedom of access acts from New Hampshire, Ohio and Utah.

Reliance on New Hampshire law is not persuasive. The New Hampshire Right –to-Know Law, though similar in scope to the FOAA, lacks a specific

9

definition for "public records," requires that minutes be taken at all meetings, including executive sessions, and lacks the legislative mandate of liberal construction found in section 401 of the FOAA. *See* N.H. Rev. Stat. Ann. § 91-A (2007).

Further, the specific case relied upon by the School Committee sets forth the proposition that a personal recording made by a public official at a public meeting is exempt from disclosure because it was not created in connection with the public meeting. *Brent v. Paquette*, 567 A.2d 976, 980 (N.H. 1989). In that case a public official made a recording of a hearing for the purpose of a potential future defense to defamation, the recording was not made in connection with the work of the public agency. *Id.* The New Hampshire Supreme Court concluded that the public was not entitled to records that did not have an official purpose. *Id.*

An analysis under Ohio's public access law is also unpersuasive. *See* Ohio Rev. Code Ann. § 199.43 (2007). The Ohio statute defines "public record" as those records "kept by any public office. . . " *Id.* This definition is more narrow than the FOAA which includes documents "in the possession of . . . public official[s]." 1 M.R.S. 402(3).

In contrast, the Utah public access law has a broad definition of "public records" however the statute contains none of the explicit public policy language contained in the FOAA. *See* Utah Code Ann. § 63-2-201. Further, in the case relied upon by the School Committee, the Supreme Court of Utah found that a clerk's untranscribed notes, which were subsequently incorporated into the minutes of the public office, non-public records. *Conover v. Board of Ed. Of Nebo Sch. Dist.*, 267 P.2d 768, 770 (Ut. 1954). The Court stated however that:

10

> [T]he more pertinent cases are found . . . whenever a written record of a transaction of a public officer in his office is a convenient and appropriate mode of discharging the duties of his office, and is kept by him as such, whether required by express provision of law or not, such a record is a public record.

*Id.*

The Federal Freedom of Information Act is likewise inapplicable. *See* 5 U.S.C.S. § 552 (2007). That statute is applicable to federal agency records and specifically sets forth which records the public should have access to, in contrast to the broad definition of "public records" under the FOAA. *Id.*

In this case the private notes of committee members would fall under the FOAA broad definition of public records if those notes "contain[] information relating to the transaction of public or governmental business.. . . ." *Quoting* 1 M.R.S. § 402(3). While this Court recognizes the right of committee members to have their private thoughts, and recognizes that the actual notes in this case are scant and minimally illustrative of Executive Session deliberations, these notes (and those of Attorney Pringle) are the *only* record of the Executive Session. Should the legislature choose to create an exception under the FOAA for private notes, it may do so. Until that time the law and plainly stated Legislative intent lead this Court to conclude that the notes are a public record.

b. Were the Notes Taken by Attorney Pringle "Work Product" and Therefore Privileged Writings Under the FOAA?

Documents that would otherwise be privileged in court are excepted under the FOAA. 1 M.R.S. § 402(3)(B). However, the Law Court has stated that

> [i]n construing FOAA's statutory provisions, we will consider the underlying public policy and rules of construction expressed by the Legislature in 1 M.R.S. § 401. The public policy guiding the

interpretation of FOAA is the Legislature's declaration that 'public proceedings exist to aid in the conduct of the people's business.'

*Citizens Commc'ns Co. v. Attorney Gen.; Societe Colas, S.A. v. Dept.. of the Attorney Gen.*, 2007 ME 114, ¶ 9, __ A.2d __ (*quoting* 1 M.R.S. § 401). Further, "[t]he mere presence of an attorney cannot be used to circumvent the F[O]AA's open meeting requirement. *Underwood*, 1998 ME 166, ¶ 16, 715 A.2d at 153 (citations omitted).

The School Committee contends that notes taken by Attorney Pringle are privileged under the work product doctrine. A document is protected under the work product doctrine if (1) the document was created with a subjective anticipation of litigation; (2) the subjective anticipation of litigation was reasonable; and (3) the document is "of a type that can be considered work product." *Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶¶ 16-17, 754 A.2d 353, 358. The party seeking to protect documents under the work product doctrine has the burden of establishing that those documents are within the scope of the doctrine. *Id.* ¶ 15, 754 A.2d at 358 (*citing* M.R.Civ.P. 26(b) (3)). The burden then shifts to the party seeking disclosure to "demonstrate that it has substantial need of the materials. *Id.*

The key issue with respect to the application of the work product doctrine in this case is whether Attorney Pringle's notes were prepared with a subjectively reasonable anticipation of litigation. The School Committee claims that they were because of the "executive session of the School Committee in the midst of a budget deficit."

The burden is on the party seeking to prevent disclosure to demonstrate that its expectation of litigation is reasonable. *Id.* ¶ 19, 754 A.2d. at 358.

However, "[a] remote possibility of litigation is insufficient. . . ." *Id.* (citation omitted). The test for reasonableness is that "[t]he document must be prepared because of the prospect of litigation when the preparer faces an actual claim or potential claim following an actual event or series of events that reasonably could result in litigation." *Id.* (*citing National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.,* 967 F.2d 980, 984 (4th Cir. 1992)).

The *Springfield* Court considered documents prepared by the Department of Transportation in conjunction with a dispute over the use of certain railroad tracks near Lewiston, Maine and a request under the FOAA for release of documents pertaining to that dispute. *See Springfield,* 2000 ME 126, 754 A.2d. 353. That court found that the work product doctrine did apply with respect to certain documents prepared regarding an oral agreement made between the Department of Transportation and Guilford Transportation Industries, Inc. because the Department's anticipation of litigation was deemed reasonable. *Id.* ¶ 22, 754 A.2d. at 359.

In this case the School Committee asserts the work product doctrine based on the possibility of litigation that may result from the Executive Session. The potential litigation in *Springfield* centered on a specific dispute with the railroads and the Department of Transportation. *See Id.*

In light of the test of a reasonable anticipation of litigation ("when the preparer faces an actual claim or potential claim following an actual event or series of events that reasonably could result in litigation." *Id.* ¶ 19, 754 A.2d. at 358), the anticipated litigation in this case is too general. This conclusion is based on the mandate to construe exceptions under the FOAA narrowly, *id.* ¶ 8, 754 A.2d. at 356, which is reiterated throughout FOAA case law, *see generally,*

13

*Cyr,* 2007 ME 28, 916 A.2d 967; *Underwood,* 1998 ME 166, 715 A.2d; *Springfield,* 2000 ME 126, 754 A.2d 353, and the more specific anticipation of litigation considered in Springfield. *Id.* To allow the work product doctrine privilege under such a general anticipation of litigation would circumvent the FOAA because it would open the door to Executive Sessions where the only record of the session exists in attorney notes.

Thus, this Court will consider Attorney Pringle's notes and redact those portions that are privileged under 1 M.R.S. §§405(6) (A) and (E) and § 402(3) (B) (annexed hereto as Exhibit A).

c. Is the School Superintendent's Management Philosophy Statement a Public Record?

The School Committee contends that the superintendent's management philosophy document, distributed at the meeting should remain confidential. The School Committee asserts that if the Executive Session is found lawful, then all documents of or pertaining to that Session are privileged. The Portland Press Herald asserts that such a conclusion would undermine the purpose of the FOAA, which sets forth specific exceptions to its broad public access rule.

At hearing the School Committee did not meet its burden to show that such a broad exception exists under the FOAA. Further, the superintendent testified that there was nothing in the document that was damaging to her reputation (transcript p. 46), thus precluding an exception under 1 M.R.S. § 405(6) (A) (1). *See* 1 M.R.S. § 405(6) (A) (1).

This Court thus holds that Superintendent O'Connor's management philosophy document is a public record under the FOAA.

14

**The entry is:**

Those portions of the Executive Session that specifically dealt with budgetary deliberations are held improper under the FOAA. All notes taken in the Executive Session have been submitted to this Court for in camera review and those notes that reflect improper deliberations will be released as public records.

Specifically, the School Committee has provided this Court with transcribed notes taken by Attorney Pringle. Those notes have been reviewed and redacted and are attached hereto as Exhibit A. The School Committee also provided the private notes of Committee Member Ellen Alcorn. Those notes are deemed a public record and are attached hereto as Exhibit B. The personal notes of Committee Member Lori Gramlich are likewise deemed a public record and are attached hereto as Exhibit C. The management philosophy statement prepared by Superintendent O'Connor and made available by the School Committee is deemed a public record and is attached hereto as Exhibit D.

All of the aforementioned documents shall be impounded by this Court for up to twenty-one (21) days pending appeal by either party. Shall no appeal ensue, the documents deemed "public records" will be released forthwith by this Court.

DATE: August 21, 2007

Roland A. Cole
Justice, Superior Court

15

COURTS
d County
x 287
, 04112-0287

JONATHAN PIPER ESQ     -ϒ
SIGMUND SCHULTZ ESQ
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
PO BOX 9546
PORTLAND ME 04112-9546

F COURTS
nd County
ox 287
1e 04112-0287

MELISSA HEWEY ESQ
DRUMMOND WOODSUM & MACMAHON
PO BOX 9781
PORTLAND ME 04104