MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 67
Docket:       Yor-17-191
Submitted
 On Briefs:   October 24, 2017
Decided:      May 8, 2018

Panel:        SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

MARCEL DUBOIS et al.

v.

OFFICE OF THE ATTORNEY GENERAL et al.

HJELM, J.

[¶1] In an order entered in April of 2017, the Superior Court (York County, *O'Neil, J.*) affirmed a decision of the Maine Office of the Attorney General denying a request made by Dubois Livestock, Inc., pursuant to the Freedom of Access Act, 1 M.R.S. §§ 400-414 (2017), for drafts of a letter sent in January of 2016 by the Maine Department of Agriculture, Conservation and Forestry (DACF) to Dubois Livestock. In the same order, the court determined that the Office of the Attorney General did not have just and proper cause to deny Dubois Livestock's FOAA request for a series of emails preparatory to a meeting held among agents of several state agencies in connection with enforcement efforts against Dubois Livestock.

[¶2]  Two individuals associated with Dubois Livestock—Marcel Dubois, and Sol Fedder, who submitted the FOAA request on behalf of Dubois Livestock—appeal the first aspect of the court's order, which we affirm because the drafts of the January 2016 letter constitute privileged work product material not subject to FOAA disclosure.  The Office of the Attorney General and Assistant Attorneys General Emily K. Green and Scott Boak (collectively, OAG) cross-appeal from the latter part of the order, which we vacate because the emails regarding the meeting are also protected as work product.

## I.  BACKGROUND

[¶3]  The following facts are drawn from the court's findings, which are supported by the record, and from assertions contained in OAG's filings that Dubois and Fedder have not disputed.[1]  *See Dubois v. Dep't of Envtl. Prot.*, 2017 ME 224, ¶ 3, 174 A.3d 314.

---

[1]  As is discussed in the text, OAG filed affidavits pursuant to the court's order to support its position.  Dubois and Fedder assert that the affidavits submitted by OAG are "incompetent" because the information contained in them is not based on personal knowledge.  Dubois and Fedder have not developed that argument on appeal, however, and so it is waived.  *See Laqualia v. Laqualia*, 2011 ME 114, ¶ 34, 30 A.3d 838.  Further, Dubois and Fedder challenged only the process by which the information contained in the affidavits was presented to the court, so the information itself is undisputed.  Finally, even if Dubois and Fedder are correct that the affidavits must be based on personal knowledge, the affidavits would be proper because their contents make clear that they are based on personal knowledge.

[¶4]  In May of 2015, DACF and the Maine Department of Environmental Protection began to receive and investigate numerous odor complaints relating to Dubois Livestock's business operations, which include producing compost. Because the complaints generated both agricultural and environmental concerns, DACF and DEP conducted a coordinated investigation into these complaints.  During that effort, DEP and DACF were represented by assistant attorneys general.  On May 8, 2015, Michael Clark, a DEP project manager whose responsibilities encompass regulation of Dubois Livestock's compost operations, requested information from Dubois Livestock about the material spread on its fields.  Three days later, Dubois Livestock notified Clark that it intended to file a complaint against DEP for criminal trespass based on an entry by state officials onto the farm's premises.  After receiving this letter, Clark met with the assistant attorney general who represented DEP to discuss obtaining an administrative inspection warrant to enter Dubois Livestock's fields and facilities.  DEP began drafting an application for the warrant shortly after this meeting.  On November 20, 2015, DEP filed an enforcement action against Dubois Livestock.

[¶5]  As for DACF, on October 16, 2015, DACF Agricultural Compliance Officer Matt Randall sent an email to Dubois Livestock also requesting

information about the materials spread on its fields. In response, Dubois Livestock notified DACF that it would not be "coerced or bullied into answering" the agency's questions about the farming operations. At that point, DACF began to consider bringing its own action against Dubois Livestock to enforce agriculture laws based both on the underlying complaints and on Dubois Livestock's refusal to cooperate with the State's investigation. During his investigation, Randall became aware that Dubois had threatened to bring a criminal trespass action against DEP. In January of 2016, Randall, on behalf of DACF, sent a letter to the directors and managers of the various Dubois Livestock entities explaining that legal protections against nuisance complaints were not available to the farms unless they cooperated with DACF's investigation. It appears from OAG's briefs filed with the trial court and on this appeal that the January 2016 letter was the final product of the drafts that Dubois and Fedder seek to obtain in this action.

[¶6]  On April 27, 2016, OAG received a FOAA request from Sol Fedder as representative of Dubois Livestock. *See* 1 M.R.S. § 408-A. The request sought drafts of the January 2016 letter that Randall sent to Dubois Livestock and documents pertaining to a meeting of DEP, DACF, and OAG employees held on

December 4, 2015.[2]   OAG denied the FOAA request in its entirety, *see id.*
§ 408-A(4), asserting that the records were prepared in anticipation of
litigation and were therefore protected as work product not subject to FOAA
disclosure, *see id.* § 402(3)(b).

[¶7]  Dubois and Fedder challenged OAG's denial of the FOAA request in
an action filed in the Superior Court.[3]  *See* 1 M.R.S. § 409.  On motion filed by
OAG, the court issued a scheduling order directing OAG to submit the contested
documents under seal for the court's *in camera* review and to file with the court,
with a copy to Dubois and Fedder, an exceptions log identifying the documents
and the reasons they were withheld.  The scheduling order also permitted OAG

---

[2]  Apparently, Dubois learned of the December 4, 2015, meeting from documents inadvertently disclosed by DACF to Dubois Livestock pursuant to a separate FOAA request.  In its April 29 letter, OAG notified Dubois Livestock that the inadvertently disclosed documents were privileged work product and requested that it "return or discard all copies."

[3]  Although Dubois and Fedder styled their complaint in part as an appeal from agency action filed pursuant to Maine Rule of Civil Procedure 80B (which, because the challenge is to a decision of a state agency, would be governed by Rule 80C), that Rule does not govern this action.  *See* M.R. Civ. P. 80B, 80C; 1 M.R.S. § 409 (2017). As presently constituted, 1 M.R.S. § 409(1) creates a procedure for a party aggrieved by the denial of a FOAA request to file an "appeal" in the Superior Court.  *See id.*  That statute, however, authorizes the court to take testimony and other evidence as the court deems necessary in order to resolve any disputed facts and adjudicate whether the denial was proper.  *See id.*; *Dubois v. Dep't of Envtl. Prot.*, 2017 ME 224, ¶ 10, 174 A.3d 314.  Similarly, the prior version of section 409(1) specified that the court was to conduct a "trial de novo," *see* 1 M.R.S. § 409(1) (2014) (amended by P.L. 2015, c. 249, § 2 (effective Oct. 15, 2015)), a process that is not appellate in nature or function, *see Underwood v. City of Presque Isle*, 1998 ME 166, ¶ 22, 715 A.2d 148.  Neither the current procedural framework nor the one it replaced call for the court to act in an appellate capacity because both versions of the statute contemplate that the court will take evidence and act in a fact-finding role.  *See* 1 M.R.S. § 409(1); 1 M.R.S. § 409(1) (2014) (repealed by P.L. 2015, c. 249, § 2 (effective Oct. 15, 2015)).

6

to file with the court, again with a copy to Dubois and Fedder, an affidavit explaining its decision to withhold the documents at issue. The order allowed Dubois and Fedder to then file "supporting materials" and established a briefing schedule. With its brief, OAG filed affidavits executed by Randall and another DEP official. Dubois and Fedder filed a brief containing arguments of law, but they did not submit their own affidavits or any other material.

[¶8]  The court conducted an *in camera* review of the documents submitted by OAG and held oral argument. In April of 2017, the court issued an order concluding that the drafts of the letter sent by DACF to Dubois Livestock were not subject to disclosure pursuant to FOAA because they were created in anticipation of litigation and therefore protected as work product containing mental impressions, conclusions, and legal theories. The court determined, however, that the emails concerning the December 4, 2015, meeting among DEP and DACF agents and assistant attorneys general representing those agencies were not privileged and ordered OAG to produce those emails. Dubois appealed, and OAG cross-appealed. *See* M.R. App. P. 2(b)(3) (Tower 2016).[4]

---

[4] This appeal was filed before September 1, 2017; therefore, the restyled Maine Rules of Appellate Procedure do not apply. *See* M.R. App. P. 1 (restyled Rules).

## II.  DISCUSSION

[¶9]  Dubois and Fedder raise challenges to the process used by the court, which we address before proceeding to the merits of the parties' appeals.

## A.    Due Process

[¶10]  Dubois and Fedder argue that the trial court violated their right to due process by declining to order OAG to produce an exceptions log that is more detailed than what was already provided pursuant to the scheduling order and by relying on the two affidavits submitted by OAG as the basis for the court's factual findings.[5]

[¶11]  We review due process claims de novo.  *State v. Jones*, 2012 ME 126, ¶ 35, 55 A.3d 432.  "Due process is a flexible concept" analyzed on a case-by-case basis.  *Bog Lake Co. v. Town of Northfield*, 2008 ME 37, ¶ 10, 942 A.2d 700 (quotation marks omitted).  The two essential elements of due process are notice and the opportunity to be heard.  *Portland Pipe Line Corp. v. Envtl. Improvement Comm'n*, 307 A.2d 1, 15 (Me. 1973).

---

[5]  Dubois and Fedder also assert that they were entitled to see the documents reviewed by the court *in camera* so that they could be heard on whether the documents should be disclosed to them. We have recently rejected this internally fallacious argument in a case also involving Dubois and Fedder, *see Dubois v. Dep't of Envtl. Prot.,* 2017 ME 224, ¶ 9, 174 A.3d 314, and do not address it further here.

8

### 1.      Exceptions Log

[¶12]   Pursuant to FOAA, a person or agency that refuses access to a public record is required, within five business days after receiving the request, to provide the requesting party with "written notice of the denial, stating the reason for the denial . . . ." 1 M.R.S. § 408-A(4).  Additionally, in this particular proceeding the court ordered OAG to file an "Exceptions Log itemizing the documents at issue and the reason(s) they were withheld."  OAG complied with the requirements of both the statute and the order.  Dubois and Fedder's reliance on the more extensive exceptions log requirements created in Maine Rule of Civil Procedure 26(b)(5)(A) is misplaced, because neither FOAA nor the court's scheduling order incorporates that Rule's procedure for pretrial discovery. *See* 1 M.R.S. §§ 400-414.  The exceptions log provided to Dubois and Fedder was sufficient to provide them with information necessary to assert their rights pursuant to FOAA, and the court did not deprive Dubois and Fedder of their due process rights when it declined to order OAG to submit a more detailed exceptions log.

### 2.      Affidavits

[¶13]   FOAA provides that in a Superior Court proceeding involving a challenge to a denial of a request for access to public documents, the court may

conduct "a review, with taking of testimony and other evidence as determined necessary" to determine whether the denial "was not for just and proper cause." 1 M.R.S. § 409(1). This authorizes the court to establish the procedure it deems necessary for the presentation of evidence that will bear on its ultimate determination and allows the court to specify the process it will use to resolve disputed facts, "giving due consideration to the efficacy, costs, and time required for each method of presentation of evidence." *See Dubois v. Dept. of Envtl. Prot.*, 2017 ME 224, ¶ 10, 174 A.3d 314.[6]

[¶14] Exercising that statutory authority, the court provided OAG with the opportunity to file affidavits relating to its refusal to disclose the requested documents. Although it did not explicitly specify that Dubois and Fedder could do the same, in the same order the court provided them with an opportunity to file "their brief and *any supporting materials.*" (Emphasis added.) Both parties were therefore effectively given the same opportunity to submit evidence. Nonetheless, Dubois and Fedder did not submit any supporting materials but rather limited their filings to legal argument. The order issued by the court reveals that it fully considered the evidence submitted by the parties and their

---

[6] This constitutes a shift from the requirement of a trial de novo prescribed by an earlier version of section 409(1). *See supra* n.3. We have described the statutory change as creating an "improved evidentiary process." *Dubois v. Dep't of Envtl. Prot.*, 2017 ME 224, ¶ 11, 174 A.3d 314.

legal arguments. The procedural course of the case was well within the court's statutory authority and did not constitute an abuse of discretion, *see Dubois v. Dep't of Envtl. Prot.*, 2017 ME 224, ¶ 10, 174 A.3d 314, and Dubois and Fedder were not denied an opportunity to be heard.

B.      Work Product Privilege

[¶15]  We now address the merits of the parties' respective challenges to the court's determinations that the drafts of the January 2016 letter are not subject to FOAA disclosure because they *are* work product, and that the emails sent in preparation for the December 2015 meeting *are not* work product and thus not protected.  "In reviewing whether a government entity complied with the FOAA, we review factual findings for clear error, but review the trial court's interpretation of the FOAA de novo."  *Hughes Bros., Inc. v. Town of Eddington*, 2016 ME 13, ¶ 21, 130 A.3d 978 (citations omitted).

[¶16]  Pursuant to FOAA, "[t]he burden of proof is on the agency or political subdivision from which the information is sought to establish just and proper cause for the denial of a FOAA request."  *MaineToday Media, Inc. v. State*, 2013 ME 100, ¶ 9, 82 A.3d 104 (alterations omitted) (quotation marks omitted); *see* 1 M.R.S. § 409(1). Courts must give FOAA liberal construction and application, and "[s]tatutory exceptions to the FOAA are to be strictly

construed." *Preti Flaherty Beliveau & Pachios LLP v. State Tax Assessor*, 2014 ME 6, ¶ 10, 86 A.3d 30.

[¶17] The starting point for the FOAA analysis is the statutory principle that a person has the right to inspect and copy "any public record." 1 M.R.S. § 408-A(1). As pertinent to this case, "public record" includes any matter in tangible or electronic form "that is in the possession or custody of [a State] agency or public official . . . and [that was] received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business." *See* 1 M.R.S. § 402(3). The definition of "public record," however, is subject to a number of exceptions, one of which is central to this case: *"[r]ecords that would be within the scope of a privilege against discovery* or use as evidence recognized by the courts of this State in civil or criminal trials if the records or inspection thereof were sought in the course of a court proceeding." *Id.* § 402(3)(B) (emphasis added).

[¶18] This exception encompasses the work product privilege. Pursuant to Maine Rule of Civil Procedure 26(b)(3), "a party may obtain discovery of documents . . . prepared in anticipation of litigation" but only if the party demonstrates that it has a "substantial need" for the documents to prepare its

12

case and cannot obtain the "substantial equivalent" of such documents without "undue hardship." Even where a party can make this showing, the requesting party is not entitled to records that contain an attorney's mental impressions, conclusions, opinions, or legal theories concerning the litigation.[7] *Id.*; *Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, ¶ 13, 754 A.2d 353. "A document is protected as work product only if it was created because of the party's subjective anticipation of future litigation[,]" which must be "objectively reasonable." *Id.* ¶ 16 (quotation marks omitted). "[A] document prepared in the regular course of business may be prepared in anticipation of litigation when the party's business is to prepare for litigation." *Harriman v. Maddocks*, 518 A.2d 1027, 1034 (Me. 1986) (quotation marks omitted). As we have recently held, documents "prepared in anticipation of regulatory enforcement or other compliance-related litigation" constitute a form of work product. *Dubois v. Dep't of Envtl. Prot.*, 2017 ME 224, ¶ 17, 174 A.3d 314.

---

[7] While it is clear that Dubois and Fedder contend that the material at issue is not work product in the first place, it is less clear that they are also contending that *if* that material is work product, they are nonetheless entitled to its access because of the conditional nature of the work product privilege as noted in the text. We nonetheless address that issue to round out the work product analysis.

1.     Drafts of January 2016 DACF Letter

[¶19]  Dubois and Fedder assert that the court erred by concluding that the work product privilege shielded from FOAA disclosure the drafts of the letter that, in final form, DACF sent to Dubois Livestock in January of 2016.  The drafts were circulated for review and comment among several DEP and DACF employees and the assistant attorneys general who represented those agencies in connection with the investigations into Dubois Livestock.

[¶20]  The contents of the drafts, which remain sealed pursuant to the court's order, plainly demonstrate that both the drafts and the resulting final version of the letter were created in anticipation of litigation and that the drafts are fully protected from FOAA access because they contain attorneys' mental impressions, conclusions, opinions, or legal theories concerning the prospective litigation.

[¶21]  As the court found, with support in the record, DACF reasonably anticipated litigation with Dubois Livestock as early as May of 2015, and that anticipation continued throughout the time the letter—which concerned the matters being investigated—was being drafted.  Given these circumstances, the court did not err when it concluded that the drafts comprised work product

14

material and were not subject to any exception to that privilege. *See* M.R. Civ. P. 26(b)(3).

[¶22] Dubois and Fedder argue that any anticipation of litigation was not reasonable because DACF had not completed the procedural steps necessary to bring an enforcement action. As a predicate to concluding an investigation into a complaint involving a farm, DACF's administrative rules require the agency to make a determination and render findings and any recommendations prescribing best management practices, and in some situations the Commissioner is required to send a written report to the Attorney General. S*ee* 1 C.M.R. 01 001 010-3 § 3(5) (2007); 7 M.R.S. § 158 (2017). Even though those regulatory steps had not yet been completed when Randall sent the letter, the circumstances demonstrate that the letter was drafted when there existed a reasonable *anticipation* that litigation would occur. *See Springfield Terminal*, 2000 ME 126, ¶ 16, 754 A.2d 353.

[¶23] Dubois and Fedder also argue that the work product privilege was waived because DACF collaborated on the drafts with DEP employees and assistant attorneys general representing DEP.[8] A party waives the work

---

[8] As part of their argument that OAG waived any privilege, Dubois and Fedder claim that the administrative enforcement efforts constituted the federal crime of obstruction of justice and that

product protection by disclosing the material "in a way inconsistent with keeping it from an adversary." *U.S. v. Mass. Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997). Here, as the court found, DACF and DEP coordinated their investigations into Dubois Livestock's operations because the two agencies had overlapping regulatory and enforcement interests. They coordinated their efforts in consultation with their attorneys, and OAG did not disclose the drafts of the letter in a way that would expose that material to an adversary. Therefore, neither DACF nor its attorneys waived the work product privilege by consulting with DEP and its attorneys. *See id.*

2.    Scheduling Emails

[¶24]  OAG argues that the work product privilege also applies to a series of emails that involved planning for a strategy meeting held on December 4, 2015, and that the court erred by concluding otherwise. We agree.

[¶25]  The court found that the emails were not work product because they "merely contain correspondence . . . about the scheduling of a meeting." The emails, however, were written and circulated to schedule a meeting that was to be held because of the prospect of litigation reasonably anticipated by

---

the internal information is therefore not protected. *See* 18 U.S.C.S. § 1503 (LEXIS through Pub. L. No. 115-164). On the record before us, this argument is entirely without merit.

the agencies and their attorneys. The emails reveal the purpose of the meeting and the efforts made to accommodate the schedules of people who were to attend the meeting, which by itself points to the nature of issues and strategies that likely would be considered. Additionally, several of the emails explicitly discuss DACF's investigative and legal options. Therefore, the scheduling emails are privileged as work product. *Springfield Terminal*, 2000 ME 126, ¶ 17, 754 A.2d 353. We accordingly vacate the judgment as to these emails and remand for entry of judgment that the emails are work product and not subject to disclosure pursuant to FOAA.

## C. Conclusion

[¶26] Because the documents at issue in this case are protected work product material, they are not "public records" within the meaning of section 402(3), and OAG's denial of the request to inspect or copy those documents was therefore "just and proper." *See* 1 M.R.S. § 409(1).

The entry is:

> Judgment affirmed as to the draft letters (documents 1-20). Judgment vacated as to the emails (documents 21-31). Remanded for entry of judgment denying the plaintiffs' request for disclosure of those documents.

Marcel Dubois and Sol Fedder, appellants pro se

Janet T. Mills, Attorney General, and Thomas A. Knowlton, Asst. Atty. Gen., Office of the Attorney General, Augusta, for cross-appellants Office of the Attorney General, Emily K. Green, and Scott Boak

York County Superior Court docket number AP-2016-21
FOR CLERK REFERENCE ONLY