MAINE SUPREME JUDICIAL COURT                                Reporter of Decisions
Decision:     2013 ME 62
Docket:       Sag-12-207
Argued:       November 8, 2012
Decided:      July 2, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

## JUDY A. S. METCALF

v.

## STATE TAX ASSESSOR

SAUFLEY, C.J.

[¶1] The State Tax Assessor appeals from a judgment of the Superior Court (Sagadahoc County, *Horton, J.*) vacating the Assessor's decision that upheld a $98,180.31 Maine estate tax assessment imposed against attorney Judy A. S. Metcalf in her capacity as administratrix of a Massachusetts estate. The court held that the Assessor lacked the authority to impose personal liability for unpaid estate taxes on a personal representative appointed by an out-of-state court to administer a foreign estate. We conclude that Maine tax law, 36 M.R.S. §§ 112(1), 4062(5), 4064,[1] 4065, 4074, 4078 (2012), provides the Assessor with the authority to hold a personal representative appointed by an out-of-state court personally liable for

---

[1]  Metcalf administered the estate of Alfred F. Anderson, a resident of Massachusetts, who died in January 2004. Although the Legislature has amended 36 M.R.S. § 4064 (Supp. 2003), the statute in effect at the time of Anderson's death, several times, those changes do not affect the outcome of this dispute. *See, e.g.*, P.L. 2011, ch. 380, §§ M-7, M-10 (effective June 20, 2011) (codified at 36 M.R.S. § 4064 (2012)).

unpaid Maine estate taxes resulting from the sale of real property located in Maine. Therefore, we vacate the Superior Court's judgment and remand for entry of judgment against Metcalf.

## I. BACKGROUND

[¶2]  The following facts are undisputed, unless otherwise indicated.

[¶3]  Alfred F. Anderson, a resident of Massachusetts, died on January 11, 2004.  At the time of his death, Anderson owned three parcels of real property located on Linekin Road in Boothbay Harbor, Maine.  Most relevant to this dispute is the 24.2-acre parcel referred to as the "Back Parcel" by the parties.

[¶4]  In accordance with Anderson's will, the Massachusetts Probate and Family Court appointed Martin Gerstmar as executor[2] of Anderson's estate (the Estate) on January 24, 2004.  On September 7, 2004, Gerstmar sold the Back Parcel to the Linekin Bay Trust, of which his son was a co-trustee,[3] for $170,000. In October 2004, Gerstmar filed Maine and federal estate tax returns valuing the Back Parcel at $170,000.  Based in part upon that valuation, the Estate paid federal taxes amounting to $635,574 and Maine taxes totaling $85,198.

---

[2]  For purposes of this case, the term "personal representative" as used in Maine's estate tax laws, *see* 36 M.R.S. § 4062(5) (2012), and the Maine Probate Code, *see* 18-A M.R.S. § 1-201(30) (2012), includes individuals designated as executors and administrators.

[3]  The Linekin Bay Trust was a Massachusetts trust declared on January 30, 2004, by trustees Steven Jordan and Scott Gerstmar.

[¶5]  In the summer of 2005, the Estate's residuary beneficiaries retained Metcalf to pursue their claims against Gerstmar, including an allegation that he sold the Back Parcel to a related party at a price below market value.  In October 2005, Metcalf hired Andrew Noyes to appraise the Back Parcel.  Noyes estimated that, at the time of Anderson's death in 2004, the Back Parcel's market value was $355,000.

[¶6]  In October 2005, the beneficiaries petitioned the Massachusetts Probate and Family Court to remove Gerstmar as executor of the Estate (Massachusetts Action).  Metcalf, on behalf of the beneficiaries, filed suit in the Maine Superior Court (Lincoln County) against Gerstmar and the trustees of the Linekin Bay Trust for their actions related to the sale of the Back Parcel (Maine Action).

[¶7]  On January 17, 2007,[4] the beneficiaries entered into two settlement agreements resolving the Maine Action.  The first agreement provided that (1) Gerstmar would resign as executor, (2) the beneficiaries would pay Gerstmar an executor fee of $15,000, and (3) Gerstmar would place $30,000 in an escrow account to pay interest and penalties resulting from the difference between the Back Parcel's valuation recorded on the 2004 federal and state estate tax returns and the appraisal conducted by Noyes in 2005.  Pursuant to the second settlement

---

[4]  Although the stipulated facts indicate that both settlements resolving the Maine Action occurred on January 17, 2007, other record documents show that the settlement agreement involving the transfer of land from the Linekin Bay Trust to the beneficiaries took place in May 2006.

4

agreement, the trustees of the Linekin Bay Trust transferred three parcels of land composing a portion of the Back Parcel directly to the beneficiaries.[5] On the same day, the beneficiaries entered into a settlement agreement with Gerstmar regarding the Massachusetts Action whereby Gerstmar resigned as executor.

[¶8]  Also occurring on January 17, 2007, the Massachusetts Probate and Family Court named Metcalf as administratrix of the Estate.  At the time of Metcalf's appointment, the Estate's bank account held a balance of $1,021,314.75. Soon after her appointment, Metcalf began making distributions from this account that eventually totaled $459,506.88.  The distributions included $50,000 to the beneficiaries on January 31, 2007; $15,000 to Gerstmar on January 31, 2007, pursuant to the settlement agreement; $43,150.88 to Metcalf's law firm, Eaton Peabody, between January 2007 and January 2008; $42,270 to Roberta Murray, one of the beneficiaries, on February 9, 2007; and $309,086 to Inheritance Funding Co., Inc., for the benefit of the beneficiaries, on February 16, 2007.  Thus, by mid-February 2007, the Estate appears to have held assets of approximately $560,000.[6]

---

[5]  The parcels of land subject to the second settlement agreement did *not* pass to the beneficiaries through the Estate.

[6]  This estimated total does not account for the $30,000 held in escrow as part of the settlement agreement between the Estate and Gerstmar.

[¶9]  On February 27, 2007, Metcalf received written notification from the IRS proposing to increase the Back Parcel's valuation.  In August 2007, the Estate received a notice of deficiency in which the IRS valued the Back Parcel at $1,359,488.  Primarily due to the Back Parcel's revaluation, the Estate's federal taxes increased by $639,279.  The IRS also imposed an additional tax for civil fraud against the Estate amounting to $519,959.

[¶10]   In May 2008, the Estate and IRS settled the deficiency claim. Agreeing to a value for the Back Parcel of $950,000, the Estate consented to pay approximately $340,000 in additional federal estate tax,[7] $117,000 in civil penalties, and $134,000 in interest for a total of about $591,000.[8]  The IRS agreed to pursue Gerstmar for any additional penalties related to fraud.  In June 2008, the Estate paid the federal tax, penalties, and interest.  Those payments essentially exhausted the remaining Estate assets.

[¶11]  Seven months later, in January 2009, Metcalf filed an amended Maine estate tax return reflecting the Back Parcel's $950,000 valuation as agreed to in the

---

[7]  The parties stipulated that the Estate paid $343,404.28 in additional federal estate tax.  However, the parties also stipulated, and all other record documents confirm, that the Estate paid a total of $591,168.12 in the settlement with the IRS.  The sum of the stipulated federal tax, penalties, and interest exceeds the total settlement amount by approximately $3,000.  Other record evidence, specifically the affidavit of attorney Metcalf, indicates that the Estate actually paid $340,404.28 in additional federal tax.  This amount reconciles the $3,000 discrepancy.

[8]  Although the parties did not stipulate to this fact, the record indicates that the Estate paid the federal assessment using $561,168.12 from its bank account and $30,000 held in escrow pursuant to the settlement agreement with Gerstmar.

IRS settlement. The amended return reported an additional $63,005 due in Maine estate taxes. At that time, insufficient funds remained in the Estate to pay the Maine assessment. Metcalf requested that the Assessor seek payment for those additional taxes from Gerstmar.

[¶12] The Assessor issued a notice of deficiency to the Estate in February 2009; in July 2010, Metcalf received a notice of assessment for Maine estate tax, as well as interest and penalties, informing her that, as the Estate's personal representative, she was personally liable for the $140,755.71 owed by the Estate. In August 2010, Metcalf requested reconsideration of the notice of assessment. On January 24, 2011, the Assessor upheld an adjusted assessment of $98,180.31.[9]

[¶13] In February 2011, pursuant to Maine Rule of Civil Procedure 80C and 36 M.R.S. § 151 (2011),[10] Metcalf filed a petition for de novo review of the Assessor's denial of her request for reconsideration. The parties waived an evidentiary hearing and agreed to judicial review based on a stipulated record.

[¶14] The court vacated the Assessor's decision, concluding that the Assessor, and the Superior Court, lacked jurisdiction to adjudicate Metcalf's

---

[9] The Assessor arrived at the adjusted assessment of $98,180.31 by canceling $31,554.50 in penalties and costs; crediting the Estate for having paid $15,465.90 from the sale of a small parcel of Maine real estate owned by Anderson, discovered by the Estate in March 2007 and sold in January 2011; and accounting for an additional $4,445 in interest.

[10] Title 36 M.R.S. § 151 (2011) has since been repealed and replaced, though the changes are not relevant in the present case. *See* P.L. 2011, ch. 694, § 3 (effective May 25, 2012) (codified at 36 M.R.S. § 151 (2012)).

personal liability "as administratrix of an estate governed by Massachusetts law and supervised by a Massachusetts court." The Assessor filed a timely appeal. Metcalf filed a cross-appeal challenging the Superior Court's decision that she controlled assets that could, if she constituted a personal representative pursuant to Maine's estate tax laws, subject her to personal liability for the sale of the Back Parcel.

## II. DISCUSSION

[¶15]  Because the Superior Court undertook a de novo review pursuant to Rule 80C and section 151, we review the court's decision directly without deference to the Assessor. *See* 36 M.R.S. § 151; M.R. Civ. P. 80C; *Blue Yonder, LLC v. State Tax Assessor*, 2011 ME 49, ¶ 6, 17 A.3d 667. The facts are not in dispute, and we review the court's determinations of law de novo. *See Gannett Co., Inc. v. State Tax Assessor*, 2008 ME 171, ¶ 10, 959 A.2d 741. "The State's power to tax is strictly construed in favor of the taxpayer." *Cmty. Telecomms. Corp. v. State Tax Assessor*, 684 A.2d 424, 426 (Me. 1996).

[¶16]  The Assessor argues that Metcalf meets the definition of "personal representative" provided in 36 M.R.S. § 4062(5), thus bringing her within the jurisdiction of Maine courts, because she acted within Maine as the personal representative for the Estate. The Assessor warns that a contrary holding could

8

render taxes "uncollectable" if a foreign personal representative "distributes all estate assets before paying the Maine [e]state taxes due."

[¶17] Metcalf argues that the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1, "limits the assessment of Maine estate taxes to Maine assets." Therefore, according to Metcalf's argument, to avoid a due process violation, section 4065(1) must be read as, "'The . . . tax imposed by this chapter shall be paid by the personal representative to the extent of [*Maine*] assets subject to his control.'" Metcalf asserts that, when she became the personal representative of the Estate, there were no Maine assets subject to her control.[11] She urges us to conclude that the Assessor cannot hold her personally liable for the unpaid estate taxes associated with the Back Parcel.

A. Personal Liability of a Personal Representative Pursuant to Maine's Estate Tax Laws

[¶18] Taxation of Maine estate property owned by nonresidents is based, in part, on the federal estate tax assessment as determined by the IRS.[12] 36 M.R.S.

---

[11] Metcalf admits, however, that she did control the small parcel of Maine real property owned by the Estate and discovered in 2007.

[12] Section 4064 provides, in part,

> A tax is imposed upon the transfer of real property . . . situated in this State and held by an individual who dies . . . after December 31, 2002 and who at the time of death was not a resident of this State. Maine property is subject to the tax imposed by this section to the extent that such property is either included in the decedent's federal gross estate or is Maine elective property. The amount of this tax is equal to that proportion of the

§ 4064. Personal representatives must pay the Maine estate tax in full to the extent of assets subject to their control, 36 M.R.S. § 4065(1), and become personally liable for unpaid estate taxes, 36 M.R.S. § 4078. "Personal representatives . . . are liable for the taxes imposed by this chapter with interest . . . until the taxes are paid." 36 M.R.S. § 4078. After paying Maine estate taxes and submitting the required documentation to the Assessor—including "a copy of the final determination of the federal estate tax liability"—the personal representative is "discharged from personal liability for any deficiency in tax subsequently found to be due and is entitled to a certificate of discharge." 36 M.R.S. § 4066 (2012).

[¶19]  The parties stipulated that the Estate did not remit the additional Maine estate tax after the Estate accepted the IRS's valuation of the Back Parcel at $950,000. Nor did Metcalf receive a certificate of discharge of personal liability pursuant to section 4066.[13]  Thus, Metcalf is personally liable for the Estate's $98,180.31 in unpaid taxes if she acted as the Estate's personal representative for

---

> federal credit that the value of the decedent's Maine real and tangible personal property in this State bears to the value of the decedent's federal gross estate.

36 M.R.S. § 4064 (2012).

[13]  The discharge that Gerstmar received from the Assessor in 2004 has no effect on Metcalf's personal liability. *Cf.* 26 C.F.R. § 20.2204-1(a) (2012) (providing that a discharge "applies only to [the personal representative receiving it] *in his personal capacity and to his personal assets*" and "the discharge [does] not . . . operate as a release of any part of the gross estate from the lien for estate tax for any deficiency that may thereafter be determined to be due" (emphasis added)).

10

purposes of chapter 575, unless there is a constitutional impediment to that liability.

[¶20]  Chapter 575, governing Maine estate tax, defines the term "[p]ersonal representative," as "the personal representative of the decedent or, if there is no personal representative appointed, qualified and acting within this State, any person who is in the actual or constructive possession of any property included in the gross estate of the decedent."  36 M.R.S. § 4062(5) (quotation marks omitted).  Thus, for the Assessor to hold Metcalf personally liable for the Estate's unpaid taxes, she must have acted as a personal representative "appointed, qualified and acting within [Maine]" *or* have constituted a person who was "in the actual or constructive possession of any property included in" the Estate.[14]  *Id.*

[¶21]  Metcalf, as a personal representative appointed by the Massachusetts Probate and Family Court, exercised actual control over the Estate's property beginning on January 17, 2007.  On that date, the Estate's assets totaled over one

---

[14]  The Superior Court concluded that the Assessor waived the argument that Metcalf "fits the . . . prong of . . . section 4062(5) [defining] 'personal representative' [as] 'any person who is in the actual or constructive possession of any property included in the gross estate of the decedent.'"  (Quoting 36 M.R.S. § 4062(5).)  The Assessor raises this argument on appeal.  "An issue raised for the first time at the appellate stage will be denied cognizance in the appellate review of the case."  *Holland v. Sebunya*, 2000 ME 160, ¶ 3 n.2, 759 A.2d 205 (quotation marks omitted).  However, contrary to the Superior Court's conclusion, the Assessor argued in its trial brief that Metcalf constituted "the personal representative of the Estate in Maine . . . within the meaning of [section] 4062(5)."  Therefore, we conclude that, for purposes of appellate review, the Assessor sufficiently raised the argument that Metcalf acted as a personal representative pursuant to either "prong" of section 4062(5).

million dollars. These assets included Maine real property, i.e., the small lot discovered in 2007,[15] and proceeds derived from the original transfer of Maine real property, i.e., the approximately $170,000 received from the sale of the Back Parcel. Thus, even construing the language of section 4062(5) "in favor of the taxpayer," *Cmty. Telecomms. Corp.*, 684 A.2d at 426, Maine's estate tax laws apply to Metcalf, who was in actual possession of property included in the Estate and controlled sufficient assets to pay the Maine estate tax assessment. *See* 36 M.R.S. §§ 4062(5), 4065(1), 4078.

B.      Satisfaction of Federal Due Process Requirements

[¶22] Maine possesses extensive power to regulate and tax the transfer of real property located within the state and may hold personal representatives accountable for the exercise of power over assets located in Maine.[16] *See Frick v.*

---

[15] See *supra* notes 9, 11.

[16] In *Frick v. Pennsylvania*, the United States Supreme Court articulated three rules governing the jurisdictional and constitutional limits of a state's taxing power. 268 U.S. 473, 488-89 (1925). First, "the exaction by a State of a tax which it is without power to impose is a taking of property without due process of law in violation of the Fourteenth Amendment." *Id.* at 488-89. Second, "while a State may so shape its tax laws as to reach every object which is under its jurisdiction it cannot give them any extraterritorial operation." *Id.* at 489. Third, "as respects tangible personal property having *an actual situs in a particular State, the power to subject it to state taxation rests exclusively in that State, regardless of the domicil of the owner*." *Id.* (emphasis added).

Emphasizing the third rule, the Court noted that it "is . . . essential to the validity of a tax that the property shall be within the [State's] territorial jurisdiction" and the "most familiar illustration [is] in . . . cases of land which, to be taxable, must be within the limits of the State." *Id.* at 489-90 (quotation marks omitted). "The jurisdiction possessed by the States of the situs [is] not partial but plenary, and include[s] power to regulate the transfer both *inter vivos* and on the death of the owner, and power to tax both the property and the transfer." *Id.* at 492.

*Pennsylvania*, 268 U.S. 473, 488-90, 492 (1925); *cf.* 3 Joseph H. Beale, *The Conflict of Laws* § 520.1 at 1561-62 (1935) (explaining that "not infrequently . . . the domiciliary administrator qualifies in another state as an ancillary administrator" and "[i]n such a case he is *accountable to each state for assets received in that state*" (emphasis added)). Metcalf, as the Estate's personal representative, is personally liable for unpaid taxes derived from the Estate's sale of *Maine real property*. *See* 36 M.R.S. §§ 4062(5), 4064, 4065, 4078. Therefore, sections 4062(5), 4065, and 4078, as applied to Metcalf under the facts of this case, do not violate her due process rights. *See* U.S. Const. amend. XIV, § 1; 36 M.R.S. §§ 4062(5), 4065, 4078; *Frick*, 268 U.S. at 488-92; 3 Beale, *The Conflict of Laws* § 520.1 at 1561-62.

C.     The Extent of Metcalf's Personal Liability

[¶23]  Section 4065 limits a personal representative's personal liability "to the extent of assets subject to [her] control." 36 M.R.S. § 4065(1). When Metcalf became the Estate's personal representative she controlled over one million dollars of Estate assets. Knowing that Gerstmar had underpaid the federal and state estate taxes, and prior to receiving a discharge of personal liability from the IRS or the Assessor, Metcalf made disbursements totaling nearly $460,000 to Gerstmar, the beneficiaries, her law firm, and a private company for advances the beneficiaries received against their inheritances. Even after these disbursements, and at the time

the Estate entered settlement negotiations with the IRS, the record indicates that Estate assets approximated $560,000, along with $30,000 held in escrow for unpaid property taxes. Thus, whether Metcalf's liability for Maine taxes is limited to the Estate assets she controlled after accepting her appointment as personal representative; to the assets available after disbursing the $460,000; or to those available at the time settlement negotiations began with the IRS, she controlled sufficient Estate assets to pay the $98,180.31 state tax assessment imposed against her.

## III. CONCLUSION

[¶24] Pursuant to section 4064, the Estate owes taxes based on the sale of real property located in Maine. Metcalf, as a personal representative appointed by a Massachusetts court, was in actual (or constructive) possession of the Estate's assets and is therefore a personal representative pursuant to section 4062(5). As the personal representative, she is personally liable for the Estate's unpaid Maine taxes. *See* 36 M.R.S. § 4078. The Estate's assets that she controlled were sufficient to pay the Maine assessment. *See* 36 M.R.S. § 4065(1). That assessment was not paid in full, *see* 36 M.R.S. § 4078, and Metcalf did not receive a discharge of personal liability, *see* 36 M.R.S. § 4066. Thus, we vacate the court's judgment and remand for entry of judgment against Metcalf.

The entry is:

> The judgment of the Superior Court is vacated. Remanded to the Superior Court for entry of judgment against Metcalf.

_____

**On the briefs:**

William J. Schneider, Attorney General, and William H. Laubenstein, III, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellant State Tax Assessor

R. Lee Ivy, Esq., and Michael A. Nelson, Esq., Jensen Baird Gardner & Henry, Portland, for appellee Judy A. S. Metcalf

**At oral argument:**

William H. Laubenstein, III, Asst. Atty. Gen., for appellant State Tax Assessor

Michael A. Nelson, Esq., for appellee, Judy A. S. Metcalf

Sagadahoc County Superior Court docket number AP-2011-3
FOR CLERK REFERENCE ONLY