MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2019 ME 137
Docket:       Ken-18-525
Argued:       May 16, 2019
Decided:      August 20, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

BLUE SKY WEST, LLC

v.

MAINE REVENUE SERVICES et al.

HJELM, J.

[¶1]  In a judgment entered in December of 2018, the Superior Court (Kennebec County, *Murphy, J.*) concluded that the Department of Administrative and Financial Services (DAFS) had issued correct decisions regarding two requests for public records submitted to it by Somerset County pursuant to Maine's Freedom of Access Act, 1 M.R.S. §§ 400-414 (2018).  In the requests, which were made in December of 2016 and October of 2017, the County sought records concerning valuation information that Blue Sky West, LLC, had submitted to Maine Revenue Services (MRS) as part of the State's assessment of taxes on property that Blue Sky owns in Somerset County.[1]  The

---

[1]  The County submitted its FOAA requests to DAFS, which is the umbrella agency that encompasses MRS.  *See* 5 M.R.S. §§ 281, 947-B (2018).

2

court concluded that DAFS properly determined that the records responsive to the County's 2016 request *are* public records subject to inspection and copying, *see* 1 M.R.S. §§ 402(3), 408-A, but that the records responsive to the 2017 request are confidential by statute and thus are *not* public records, *see id.* § 402(3)(A).

[¶2] The County appeals the part of the court's judgment concluding that the 2017 records are not subject to public disclosure, and Blue Sky cross-appeals the part of the judgment concluding that the 2016 records are subject to disclosure. We affirm the judgment.

## I. BACKGROUND

[¶3] The following facts are taken from the stipulated record submitted to the court.

[¶4] Blue Sky owns and operates a wind power project, a portion of which is located in the unorganized territory of Somerset County. That portion of the project was supported in part through a municipal development and tax increment financing district (TIF) approved by the State in early 2015 on application by the County. *See* 30-A M.R.S. §§ 5221-5235 (2018). In April of 2016, MRS, acting as the property tax assessor for the unorganized territory of the State, *see* 36 M.R.S. § 302 (2018), requested valuation information about the

wind power project from Blue Sky's then parent company, SunEdison, Inc. *See* 36 M.R.S. § 706 (2017).[2] In June, SunEdison responded to that request by furnishing records (the 2016 records) comprising an itemized list of project costs, which included confidentially negotiated pricing between Blue Sky and its vendors. Significantly for our purposes, when submitting the 2016 records to MRS, SunEdison did not label them as containing confidential information.

[¶5] Six months later, in December of 2016, the County submitted a FOAA request to DAFS seeking all public records associated with MRS's valuation of Blue Sky's wind power project.[3] *See* 1 M.R.S. § 408-A. Though it was not legally obligated to do so, DAFS notified Blue Sky of the County's request. In early 2017, Blue Sky sent two letters to DAFS. In the first letter, Blue Sky asserted that the records sought by the County are confidential pursuant to section 706, which states that "[i]nformation provided by the taxpayer in response to [a section 706] inquiry that is proprietary information, and clearly labeled by the

---

[2] At all times relevant to this case, 36 M.R.S. § 706 (2017) governed the collection of valuation information by tax assessors for the purpose of property tax assessments. Section 706 was repealed and replaced by P.L. 2017, ch. 367, §§ 4-5 (effective Aug. 1, 2018), and since that time the information-collection process has been governed by 36 M.R.S. § 706-A (2018). The earlier version applies to this proceeding, and the parties do not contend otherwise.

[3] According to the County, the purpose of the request was to obtain information that could help explain why it had received less property tax revenue from the wind power project than was projected by Blue Sky when the County applied for the TIF.

taxpayer as proprietary and confidential information, is confidential and is exempt from [disclosure pursuant to FOAA]." Then, apparently concerned that when SunEdison submitted the records to MRS they had *not* been marked or otherwise designated as confidential, in its second letter to DAFS Blue Sky purported to "label" the 2016 records post hoc as proprietary and confidential. Based on this attempt to label the records as confidential, Blue Sky objected to the disclosure of the 2016 records to the County. *See* 1 M.R.S. § 402(3)(A).

[¶6] In April of 2017, DAFS informed Blue Sky of its determination that the 2016 records do not fall clearly within any exemption to FOAA's definition of public records, *see id.* § 402(3), and that it planned to allow the County to inspect those records after the expiration of seven days unless otherwise directed by a court. Blue Sky promptly filed a complaint in the Superior Court naming DAFS and MRS as defendants and the County as a party in interest, and requesting a declaratory judgment that the 2016 records are not subject to disclosure pursuant to FOAA.[4]

---

[4] The complaint also included a count for injunctive relief. The court never expressly acted on that claim, but its judgment on the substance of the FOAA issues appears to have taken care of that aspect of the case, and none of the parties contends otherwise. Given these circumstances, we treat the judgment issued by the court as final and appropriate for appellate review. *See* M.R. Civ. P. 54(a); *see also Moore v. Cent. Me. Power Co.*, 673 A.2d 699, 701 (Me. 1996) (stating that the final judgment rule is meant to prevent an appeal from being entertained "while there is still a live controversy before the court" and that the rule "must be tempered with reason and applied with discretion").

[¶7] Meanwhile, in early 2017, MRS had made a second, separate section 706 request for Blue Sky to provide additional valuation information regarding the wind power project. Blue Sky provided MRS with documents satisfying that request (the 2017 records). The 2017 records contain the same type of information as contained in the 2016 records, but this time Blue Sky marked its submission "Confidential pursuant to 36 M.R.S. § 706."

[¶8] The following October, the County submitted a second FOAA request to inspect all public records associated with MRS's valuation of Blue Sky's wind power project, including all public records relating to MRS's 2017 assessment of the project. DAFS concluded that, to the extent that the County's second request encompassed the 2016 records the County had already sought, DAFS's response would be governed by the outcome of the pending court proceeding. As to the 2017 records, DAFS denied the County's request, concluding that those records are made confidential by section 706 and thus are exempt from FOAA's definition of public records.[5] *See* 1 M.R.S. § 402(3)(A).

---

[5] DAFS also concluded that the 2017 records were protected from disclosure by the work-product privilege, the attorney-client privilege, or both. *See* 1 M.R.S. § 402(3)(B) (2018); *see also* M.R. Civ. P. 26(b)(3); M.R. Evid. 502. In their combined brief submitted to the Superior Court, DAFS and MRS did not rely on either of these privileges as an alternative basis for having denied the County's FOAA request, and DAFS and MRS have expressly abandoned that contention on this appeal.

6

[¶9] In the pending Superior Court action relating to the 2016 records, the County filed a cross-claim against DAFS and MRS, seeking judicial review of DAFS's denial of the County's request to inspect the 2017 records. The procedural bases cited by the County to support its claim for relief were the Maine Administrative Procedure Act, *see* 5 M.R.S. §§ 8001-11008 (2018), and Maine Rule of Civil Procedure 80C.

[¶10] Pursuant to an order issued by the court, the parties filed a joint record consisting of stipulated facts and a number of documentary exhibits,[6] and MRS filed the 2016 and 2017 records under seal for the court's in camera review. A month later, Blue Sky and the County filed what they designated as cross-motions for summary judgment based on the previously filed record.[7] *See* M.R. Civ. P. 56.

[¶11] In the motions, Blue Sky and the County each requested that the court determine whether the 2016 and 2017 records are public records subject to inspection and copying. *See* 1 M.R.S. §§ 402(3), 408-A. Blue Sky argued that

---

[6] Among the exhibits were the County's two FOAA requests; Blue Sky's two letters objecting to the disclosure of the 2016 records; a redacted excerpt of a confidentiality provision in a contract between Blue Sky and a vendor; and documents related to the application for and approval of the TIF.

[7] In their respective motions for summary judgment, both Blue Sky and the County adopted the previously filed statement of stipulated facts as their statements of material facts. *See* M.R. Civ. P. 56(h).

the records contain trade secrets and are therefore exempt from public inspection pursuant to FOAA for two reasons: first, because trade secrets submitted to a tax assessor pursuant to section 706 are protected by that statute as proprietary information,[8] *see infra* ¶ 39; *see also* 1 M.R.S. § 402(3)(A); and second, because the records are privileged as trade secrets within the meaning of Maine Rule of Civil Procedure 26(c)(7) and Maine Rule of Evidence 507 and thus are not subject to inspection pursuant to FOAA itself, *see* 1 M.R.S. § 402(3)(B). The County contended that neither set of records falls within an exemption from public inspection pursuant to FOAA. *See id.* §§ 402(3), 408-A.

[¶12] DAFS and MRS submitted written argument asserting that although the records are not protected from public inspection as trade secrets, they could be exempt from FOAA inspection for a different reason, namely, that they comprise "production, commercial or financial information the disclosure of which would impair the competitive position [of Blue Sky] and would make available information not otherwise publicly available," and are therefore

---

[8] Blue Sky asserted, in the alternative, that the 2016 records are protected from disclosure by the more general confidentiality provision of 36 M.R.S. § 191 (2018), which prohibits the disclosure of "any report, return or other information provided pursuant to [Title 36]." The court rejected that contention, determining that section 191 contains an exception for records acquired in relation to property tax assessment, unless the information is identified as confidential within those provisions, *see id.* § 191(2)(I), and therefore that section 706 ultimately controls whether the records are confidential and protected from disclosure pursuant to FOAA. Blue Sky does not challenge that portion of the court's judgment.

"proprietary information" as defined by section 706. DAFS and MRS contended that the 2017 records, which Blue Sky had clearly labeled as confidential, are exempted from public inspection on that basis, *see* 1 M.R.S. § 402(3)(A), but that because Blue Sky had *not* clearly marked the 2016 records as confidential, those records do not qualify for protection pursuant to section 706 and *are* subject to public inspection, *see* 1 M.R.S. § 408-A.

[¶13]  In December of 2018, based on a stipulated record, the court entered a judgment that had the same outcome as DAFS's decisions. The court concluded that neither set of records contains trade secrets and that therefore the records are not exempt from disclosure on that basis. The court also concluded, however, that both sets of records contain "proprietary information" in the form of "production, commercial or financial information" as those terms are used in section 706, *see infra* ¶ 39. Because of that and because Blue Sky had clearly labeled the 2017 records as confidential, the court determined that those records are not subject to inspection. *See* 1 M.R.S. § 402(3)(A). But because the 2016 records were not similarly labeled, the requirements for statutory confidentiality created by section 706 were not fully

satisfied, and those records therefore are not exempt from disclosure.[9] *See* 1 M.R.S. §§ 402(3), 408-A.

[¶14] The County and Blue Sky each appealed the judgment. *See* 5 M.R.S. § 11008; 14 M.R.S. § 1851 (2018).

## II. DISCUSSION

A. Standards of Review

[¶15] The County's and Blue Sky's appeals come before us by way of differing statutory appellate procedures, so we must begin by addressing the applicable standards of review.

[¶16] We first consider the process used by the parties, which led to the issuance of the judgment. The parties presented their contentions to the court nominally as cross-motions for summary judgment. Ordinarily, this would require the court to determine only if there were genuine issues of material fact that would require a trial or other further proceedings for resolution. *See Scott v. Fall Line Condo. Ass'n*, 2019 ME 50, ¶ 5, 206 A.3d 307. It is evident, however, that the parties intended for the court to fully adjudicate their claims on the merits. No party cited the standard that the court would apply to a summary

---

[9] Additionally, the court rejected the County's policy-based argument that it needed access to the requested information in order to perform its duties as the administrator of the TIF. The County does not challenge that aspect of the court's judgment on appeal.

judgment motion, and no party asserted that there were factual disputes that needed to be adjudicated other than by having the court apply dispositive legal principles to the facts garnered from the stipulated record.[10]

[¶17]  That is what the court did.  The reasoning in the court's judgment was faithful to the approach associated with a merit-based analysis and not consistent with a summary judgment analysis.  For example, the court concluded that Blue Sky had "not met its burden" of demonstrating that the records at issue contain trade secrets.  Moreover, on appeal, the County asserts that the parties' presentations to the trial court are properly viewed as requests for entry of a judgment—not necessarily a summary judgment—based on a stipulated record, *see supra* n.10.  Blue Sky does not dispute that characterization, nor, more generally, does Blue Sky address the judgment with

---

[10]  Additionally, in their unified memorandum of law filed with the court, DAFS and MRS stated that "[a]lthough Blue Sky styled its recent filing as a motion for summary judgment, the parties have agreed that the [c]ourt may decide this case on the merits based on the stipulated record."  Neither of the other parties explicitly described the process that way, but neither contested that assertion.

In determining the nature of the parties' presentations to the court, it is important to note that a record of stipulated facts does not, by itself, mean that there are no genuine issues of material fact.  As we have stated, even "[w]hen presented with a stipulated record, a trial court may—unlike on a motion for summary judgment—draw factual inferences from that evidence and decide disputed inferences of material fact to reach a final result." *Rose v. Parsons*, 2015 ME 73, ¶ 8, 118 A.3d 220; *see also* Alexander, *Maine Appellate Practice* § 514 at 434 (5th ed. 2018) (stating that as an alternative to filing cross-motions for summary judgment, parties may prefer to present the court with a stipulated record for decision, which "allow[s] the trial court to draw inferences from the record to reach a final result").  Therefore, the parties' stipulation of facts did not constrain the court from making assessments regarding the weight to be given to those facts so long as the motions were not to be treated as ones for summary judgment.

the rubric associated with an appeal from a summary judgment. Further, none of the parties asserts here that the court used an incorrect legal framework in its judgment.

[¶18] For these reasons, we review the judgment, not as a summary judgment, but as one that rests on the stipulated facts and the court's evaluation of those facts.

1. Standard of Review for Blue Sky's Appeal from Grant of FOAA Request (2016 Records)

[¶19] Although FOAA provides a mechanism for a person to challenge an agency's decision *denying* a request to inspect or copy public records, *see* 1 M.R.S. § 409(1), FOAA does not govern or even address the process for judicial review of an agency's decision *granting* a request to inspect public records. As the court correctly stated in its judgment and as the parties agree, such a challenge must be developed as a request for judicial review of final agency action pursuant to the Maine Administrative Procedure Act, 5 M.R.S. § 11001(1), and Rule 80C of the Maine Rules of Civil Procedure. *See Med. Mut. Ins. Co. of Me. v. Bureau of Ins.*, 2005 ME 12, ¶¶ 3-4, 866 A.2d 117.

[¶20] On a petition for judicial review of final agency action, the Superior Court generally acts as an intermediate appellate court and confines its review to the record upon which the agency's decision was based. 5 M.R.S. § 11006(1).

12

Despite that usual appellate-style approach, however, the court is not always so limited. "In cases where an adjudicatory proceeding prior to final agency action was not required, and where effective judicial review is precluded by the absence of a reviewable administrative record," the Superior Court is authorized to "conduct a hearing de novo." *Id.* § 11006(1)(D); *see also* M.R. Civ. P. 80C(d).

[¶21] That is the case here. FOAA did not require DAFS to conduct an adjudicatory hearing prior to determining whether the 2016 records should be made available for inspection. The administrative record is devoid of any factual findings, and the agency's decision is stated summarily. That record was therefore insufficient to allow a proper judicial review of the agency's decision to provide public access to the 2016 records.[11] Accordingly, pursuant to the APA and Maine Rule of Civil Procedure 80C, the court was entitled to accept additional evidence and adjudicate the matter de novo. Although neither the court nor any of the parties explicitly cited to the authority allowing that procedure, that is effectively what happened—the court accepted the parties'

---

[11] For example, for the court to properly "review" DAFS's decision to release the 2016 records, that agency would have to have made factual findings on whether the records contain trade secrets, which is a factual question, *see Bernier v. Merrill Air Eng'rs*, 2001 ME 17, ¶ 27, 770 A.2d 97 (stating that "the determination in a given case whether specific information is a trade secret is a factual question" (quotation marks omitted)).

statement of stipulated facts and the supporting, agreed-upon documentary exhibits, and made its decision regarding the 2016 records based on a stand-alone record created within the judicial proceeding.[12] *See Rose v. Parsons*, 2015 ME 73, ¶ 8, 118 A.3d 220.

[¶22]  Because, with the parties' acquiescence, the court chose to address Blue Sky's request for review de novo rather than in an appellate capacity, we directly review the court's judgment and not the decision of DAFS.  *Cf. Warnquist v. State Tax Assessor*, 2019 ME 19, ¶ 12, 201 A.3d 602 (stating the standard of review when, in a Rule 80C proceeding, the court considered the propriety of a tax assessment decision of MRS de novo pursuant 36 M.R.S § 151-D(10)(I) (2018)); *BCN Telecom, Inc. v. State Tax Assessor*, 2016 ME 165, ¶ 2, 151 A.3d 497 (same).  We review for clear error the court's factual findings, including those it inferred from the stipulated facts and accompanying exhibits, *see supra* n.10; *Cates v. Donohue*, 2007 ME 38, ¶ 9, 916 A.2d 941 (citing *Tsoulas*

---

[12] In its order, the court recited the deferential standard of review associated with most 80C and APA requests for judicial review of final agency action.  *See* 5 M.R.S. § 11007(3) (2018) ("The court shall not substitute its judgment for that of the agency on questions of fact."); *see also* M.R. Civ. P. 80C(c).  As we note in the text, however, the administrative record in this case contains *no* factual findings made at the administrative level and thus is insufficient for effective appellate review. The court was therefore required to "either remand for such proceedings as are needed to prepare such a record or conduct a hearing de novo."  5 M.R.S. § 11006(1)(D) (2018), *see also* M.R. Civ. P. 80C(d).  The court chose the latter and decided the matter on a stipulated record submitted by the parties, *see supra* n.10.  Thus, despite its recitation of the appellate standard of review, it is clear that the court was acting as a trial court, as it was entitled to do.

14

*v. Liberty Life Assurance Co. of Bos.*, 454 F.3d 69, 75-76 (1st Cir. 2006)), and we review the court's legal conclusions de novo, *see Metcalf*, 2013 ME 62, ¶ 15, 70 A.3d 261.

[¶23] We strictly construe statutory exceptions to FOAA in order to "carry out the legislative mandate that . . . FOAA be liberally construed and applied to promote its underlying purposes and policies." *Preti Flaherty Beliveau & Pachios LLP v. State Tax Assessor*, 2014 ME 6, ¶ 10, 86 A.3d 30 (quotation marks omitted). But "when a document objectively viewed describes expressly or by clear implication information exempted from disclosure, it is properly exempted from public disclosure." *Anastos v. Town of Brunswick*, 2011 ME 41, ¶ 20, 15 A.3d 1279 (quotation marks omitted). A party seeking the administrative denial of the request to inspect records has the burden to show just and proper cause for the denial. *See Med. Mut. Ins. Co. of Me.*, 2005 ME 12, ¶ 6, 866 A.2d 117; *cf.* 1 M.R.S. § 409(1).

2. Standard of Review for the County's Appeal from Denial of FOAA Request (2017 Records)

[¶24] FOAA explicitly provides for judicial review of an agency's decision to refuse a person's FOAA request "to inspect and copy any public record." 1 M.R.S. §§ 408-A, 409(1). "Any person aggrieved by a refusal or denial to inspect or copy a record . . . may appeal the refusal [or] denial . . . to the Superior

Court . . . ." *Id.* § 409(1). The court must then determine whether the agency's refusal to allow inspection was supported by "just and proper cause." *Id.* On such a challenge, the burden of proof to demonstrate just and proper cause is on the agency that denied inspection of the records. *Dubois v. Office of the Attorney Gen.*, 2018 ME 67, ¶ 16, 185 A.3d 734. FOAA authorizes the reviewing court "to take testimony and other evidence as the court deems necessary in order to resolve any disputed facts and adjudicate whether the denial was proper." *Id.* ¶ 7 n.3. Consequently, although the process is described statutorily as an "appeal," the trial court actually conducts a "trial de novo" and does not act in an appellate capacity. *Id.*; *see also* 1 M.R.S. § 409(1). On an appeal of the resulting judgment, *see* 14 M.R.S. § 1851, we review the court's factual findings for clear error and its interpretation of FOAA de novo.[13] *Dubois*, 2018 ME 67, ¶ 15, 185 A.3d 734.

## B. Records Exempt from Disclosure Pursuant to FOAA

[¶25] We now address the merits of whether the 2016 and 2017 records are public records within the meaning of FOAA.

---

[13] As is evident from our discussion, the standards of review of judgments that either order or deny inspection of public records, when entered after the "reviewing court" has conducted a hearing de novo, are the same in the end: we review factual findings for clear error and legal determinations de novo. The procedural pathways to that result, however, are very different, as we explain in this opinion.

    1.    DAFS's Decision to Grant the County's Request for the 2016 Records

[¶26] Blue Sky asserts on appeal that for two independent reasons the 2016 records are not public records subject to inspection by the County: (1) the records contain "proprietary information" and eventually were clearly labeled as confidential, and thus are designated confidential by section 706, *see also* 1 M.R.S. § 402(3)(A); and (2) the records contain "trade secrets" within the meaning of court rules governing privileged material, *see* M.R. Civ. P. 26(c)(7); M.R. Evid. 507; *see also Spottiswoode v. Levine*, 1999 ME 79, ¶ 27 & nn.5-7, 730 A.2d 166, and are therefore protected from disclosure, *see* 1 M.R.S. § 402(3)(B). We address these contentions in turn.

    a.    36 M.R.S. § 706

[¶27] Pursuant to section 706, the property tax assessor is authorized to collect information for purposes of property tax assessment. 36 M.R.S. § 706 (2017); *see supra* n.2. As part of that process, the assessor "may require the taxpayer to answer in writing all proper inquires as to the nature, situation and value of the taxpayer's property," and if using the "income approach to value[,] . . . these inquiries may seek information about income and expenses, manufacturing or operational efficiencies, manufactured or generated sales price trends or other related information." 36 M.R.S. § 706.

[¶28]    Section 706 also governs the treatment of that valuation information.  Because some of the information may be commercially sensitive, the statute creates a measure of protection by specifying that

> [i]nformation provided by the taxpayer in response to an inquiry [made pursuant to this section] that is proprietary information, and clearly labeled by the taxpayer as proprietary and confidential information, is confidential and is exempt from the provisions of Title 1, chapter 13 [FOAA]. . . . A person who knowingly violates the confidentiality provisions of this paragraph commits a Class E crime.

*Id.*   Accordingly, for the protections afforded by section 706 to apply, two separate conditions must be met: first, the information must be "clearly labeled by the taxpayer as proprietary and confidential," and second, the information must comprise "proprietary information" as that term is statutorily defined, *see infra* ¶ 39.  If the 2016 records enjoy the protected status created by section 706, they are not subject to public inspection otherwise required by FOAA because they are not "public records."  *See* 1 M.R.S. 402(3)(A); *see also Preti Flaherty Beliveau & Pachios LLP*, 2014 ME 6, ¶ 12, 86 A.3d 30.

[¶29]    Blue Sky acknowledges that, when the 2016 records were submitted to MRS, they were not clearly labeled as proprietary and confidential.[14]  Nonetheless, Blue Sky contends that the statutory language of

---

[14] The parties stipulated that the failure to label the 2016 records as confidential was inadvertent, but, for reasons we discuss in the text, *see infra* ¶ 31, that failure, by itself, and without regard to the

18

section 706 does not require that the records be labeled in that way at the time of submission, so its subsequent letters to DAFS—sent months later, in February and March of 2017—that "identified" the records as confidential were sufficient to meet the statutory labeling requirement.

[¶30]    The question of *when* the records must be clearly labeled as proprietary and confidential in order to be protected by section 706 is a matter of statutory interpretation, a matter that we consider de novo.  *See Warnquist*, 2019 ME 19, ¶ 14, 201 A.3d 602.  "The cardinal rule of statutory construction is that when the words of the Legislature are clear, they are to be given their plain meaning and further judicial interpretation is not necessary."  *Schwartz v. Unemployment Ins. Comm'n*, 2006 ME 41, ¶ 15, 895 A.2d 965 (quotation marks omitted); *see also Pinkham v. Dept. of Transp.*, 2016 ME 74, ¶ 6, 139 A.3d 904 (stating that where a statute's "plain language is unambiguous, we afford the provision that plain meaning").

[¶31] The labeling requirement of section 706's confidentiality provision is unambiguous.  For information to be protected by that provision, it must be— as the statute plainly states—"clearly labeled by the taxpayer as proprietary

reasons, precludes the application of the protection that might otherwise be available pursuant to section 706.

and confidential." To "*clearly* label" something indicates the Legislature's intent for the label to be obvious or apparent, and, in the context of section 706, means that the information provided to the tax assessor must be actually marked by the taxpayer with words indicating that the information is "proprietary and confidential."[15] The requirement that the information be clearly marked confidential and proprietary promotes an agency's ability to timely and accurately identify potentially confidential material when a FOAA request is made. The clear, bright-line labeling requirement also places those in possession of the material on notice about its ostensibly protected status—an important effect of the label because a knowing violation of confidentiality created by section 706 is a criminal offense. *See State v. Mourino*, 2014 ME 131, ¶ 8, 104 A.3d 893 (stating that "criminal statutes must be construed strictly with ambiguities resolved in favor of the accused" (quotation marks omitted)).

[¶32] Consequently, without the need to consider whether the 2016 records meet the other requirement of section 706—that they contain

---

[15] In support of its argument for a broader temporal application of the labeling requirement, Blue Sky relies on our decision in *Anastos v. Town of Brunswick*, where we concluded that the plain and unambiguous language of a different confidentiality statute, 5 M.R.S. § 13119-A(1)(A) (2018), "does not require that the party that submits confidential information designate it as confidential at the time of submission." 2011 ME 41, ¶ 6, 15 A.3d 1279. In contrast to the language of section 706, the statute at issue in *Anastos* states that proprietary information will be protected from disclosure if "[t]he person to whom the information belongs or pertains requests that it be designated as confidential," 5 M.R.S. § 13119-A(1)(A), which is materially different from the requirement of section 706 that the information be clearly labeled.

proprietary information—the failure of Blue Sky's then parent company, SunEdison, to clearly label those records as "proprietary and confidential" at the time the records were provided to MRS forecloses the availability of the confidential status that section 706 might otherwise allow.  Accordingly, section 706 does not exempt the 2016 records from the public inspection required by FOAA.

        b.     Trade Secrets

[¶33]  Blue Sky contends that even if the 2016 records are not public records pursuant to the confidentiality provision of section 706, they are exempt and therefore protected from disclosure pursuant to FOAA for a different reason (and one that is not predicated on a clear confidentiality label)—namely, because they are "within the scope of a privilege against discovery or use as evidence recognized by the courts of this State in civil or criminal trials if the records or inspection thereof were sought in the course of a court proceeding."  1 M.R.S. § 402(3)(B).  Specifically, Blue Sky asserts that the 2016 records contain trade secrets that would be privileged under Maine Rule of Evidence 507 and Maine Rule of Civil Procedure 26(c)(7).[16]

---

[16]  Maine Rule of Evidence 507(a) provides that "[a] person has a privilege to refuse to disclose, and to prevent any other person from disclosing, a trade secret that the person owns."  Maine Rule of Civil Procedure 26(c)(7) provides the procedure for a party to request that the court issue a

[¶34]  "The definition of a trade secret is a matter of law, while the determination in a given case whether specific information is a trade secret is a factual question." *Bernier v. Merrill Air Eng'rs*, 2001 ME 17, ¶ 27, 770 A.2d 97 (alteration omitted) (quotation marks omitted).  The term "trade secret" is not defined in either the Maine Rules of Evidence or the Maine Rules of Civil Procedure, and so in previous cases we have turned for guidance to the definition provided in the Uniform Trade Secrets Act (UTSA).  *See e.g., Med. Mut. Ins. Co. of Me.*, 2005 ME 12, ¶ 13, 866 A.2d 117; *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 21, 769 A.2d 857.  UTSA defines a trade secret as information that (1) "[d]erives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use"; and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."   10 M.R.S. § 1542(4) (2018).

[¶35]   We expanded on the meaning of these two elements in *Spottiswoode*, 1999 ME 79, ¶ 27 & nn.6-7, 730 A.2d 166.  With regard to the

---

protective order for "a trade secret or other confidential research, development, or commercial information" during the discovery stage of a case.

22

first—whether information derives independent value from not being known or readily ascertainable—a court may consider the following factors in its determination:

> (1) the value of the information to the plaintiff and to its competitors; (2) the amount of effort or money the plaintiff expended in developing the information; (3) the extent of measures the plaintiff took to guard the secrecy of the information; (4) the ease or difficulty with which others could properly acquire or duplicate the information; and (5) the degree to which third parties have placed the information in the public domain or rendered the information "readily ascertainable" through patent applications or unrestricted product marketing.

*Id.* ¶ 27 n.6. In making the second determination—whether the owner of the information has made reasonable efforts to maintain its secrecy—courts may examine

> (1) the extent to which the information is known outside the plaintiff's business; (2) the extent to which employees and others involved in the plaintiff's business know the information; (3) the nature and extent of measures the plaintiff took to guard the secrecy of the information; (4) the existence or absence of an express agreement restricting disclosure; and (5) the circumstances under which the information was disclosed to any employee, to the extent that the circumstances give rise to a reasonable inference that further disclosure without the plaintiff's consent is prohibited.

*Id.* ¶ 27 n.7.

[¶36] Here, the parties stipulated that the 2017 records contain an "itemized list of Project costs . . . [that] are paid to vendors pursuant to

negotiated written agreements that require Blue Sky and its vendors to maintain the confidentiality of the agreements' terms, including financial terms," and that "reveal[] negotiated pricing between Blue Sky and its vendors." Importantly, the records do not contain the agreements between Blue Sky and its vendors.[17]

[¶37] Blue Sky asserts that the itemized costs themselves comprise trade secrets because they are "confidential, negotiated financial terms" derived from contracts that are "the product of lengthy confidential negotiations." Blue Sky also asserts that the disclosure of the cost information may impair Blue Sky's future negotiating position with others and "could provide an economic benefit to [its] competitors by improving their negotiating position against vendors without having to expend the resources that Blue Sky did in developing and negotiating contracts." Although these assertions are relevant to the trade secret analysis, they are not dispositive, as the court correctly concluded. The information contained in the 2016 records is general in content and limited in scope. When the records and surrounding

---

[17] Although Blue Sky relies on a trial court decision to support its argument that the 2016 records are trade secrets, the FOAA request at issue there was for entire insurance provider contracts, which contained detailed and unique terms and conditions. *Cent. Me. Healthcare Corp. v. Bureau of Ins.*, BCD-AP-13-03 (Bus. & Consumer Ct. July 29, 2014, *Horton, J.*). As we discuss in the text, the information sought here is much more limited.

circumstances are viewed as a whole, even with evidence that Blue Sky engaged in some effort to keep the material secret, the court did not err by determining that Blue Sky—as the party opposing the County's request to inspect the record—failed to meet its burden of demonstrating that the 2016 records have independent economic value necessary to make the information contained in them trade secrets.

2.      DAFS's Decision to Deny the County's Request for the 2017 Records

[¶38]  The County asserts on appeal that the court erred by concluding that the information in the 2017 records is made confidential by section 706 and that the records are therefore exempt from inspection pursuant to FOAA. *See* 1 M.R.S. § 402(3)(A).  As we have explained, the protections created in section 706 arise when the records are both clearly marked as proprietary and confidential and contain "proprietary information" as defined in that statute. With respect to the 2017 records, Blue Sky satisfied the first of these elements by clearly labeling them as confidential when the records were furnished to MRS.  The County contends that the court erred by concluding that the records

met the second condition, namely, that they contain proprietary information as defined in section 706.

[¶39] Pursuant to section 706, information is "proprietary" if it falls into at least one of two following categories: it is a trade secret, or it is "production, commercial or financial information the disclosure of which would impair the competitive position of the person submitting the information and would make available information not otherwise publicly available."[18] The court did not commit clear error by finding that the 2017 records satisfy the second of these alternative definitions. Because the records set out the itemized costs for Blue Sky's construction of the wind power project, the information is commercial and financial. Further, the information contained in the records reveals the price Blue Sky was willing to pay for particular production components, materials, and services—commercial information implicating the concerns that prompted the Legislature to include the confidentiality provision in section 706.[19] Consequently, the court did not commit clear error by finding that

---

[18] The definition of proprietary information in section 706 includes a third category of potentially confidential information: "information protected from disclosure by federal or state law or regulations." None of the parties contends that this alternative category applies here.

[19] The confidentiality provision of section 706 was enacted by P.L. 2013, ch. 544, § 5. Testimony before the Joint Standing Committee on Taxation demonstrates that the business community had significant concerns about the possibility that trade secret and commercial and financial information, submitted to tax assessors for purposes of property tax valuation, would be released into the public sector. *See An Act to Amend the Reporting Requirements for the Business Equipment Tax Exemption:*

26

disclosure of the information, which is not otherwise publicly available, would weaken Blue Sky's competitive position in future negotiations.

[¶40] Because the 2017 records were submitted to MRS pursuant to section 706, were clearly labeled as proprietary and confidential, and contained information that is proprietary as defined by that statute, those records are confidential pursuant to section 706 and are exempt from inspection pursuant to FOAA, *see* 1 M.R.S. § 402(3)(A).[20]

### III. CONCLUSION

[¶41] For the reasons stated above, the court did not err by concluding that the 2016 records do not fall within any exception to FOAA's definition of public records and therefore are subject to inspection and copying by the public. *See* 1 M.R.S. §§ 402(3), 408-A. Nor did the court err by determining that

---

*Hearing on L.D. 1627 Before the J. Standing Comm. on Taxation*, 126th Legis. (2014) (testimony of Scott Beal of Woodland Pulp LLC; testimony of Alan Withee, Accountant at Texas Instruments, Inc.). The confidentiality provision of section 706 appears to have represented an effort to address those concerns and encourage businesses to be less reticent to submit valuation information to the tax assessor.

[20] The County also contends that the court erred by not ordering DAFS and MRS to provide it with a version of the 2017 records with the confidential portions redacted. Because the confidentiality provision of section 706 applies to *all* the information contained in the 2017 records, however, the redaction of the confidential information would result in a record with no information remaining. Therefore, the court did not err by impliedly declining to order that redacted copies of the 2017 records be provided to the County.

the 2017 records comprise clearly labeled proprietary information protected by section 706 from disclosure pursuant to FOAA. *See id.* § 402(3)(A).

The entry is:

Judgment affirmed.

---

William H. Dale, Esq. (orally), and Mark A. Bower, Esq., Jensen Baird Gardner & Henry, Portland, for appellant Somerset County

Gordon R. Smith, Esq. (orally), Verrill Dana, LLP, Portland, for cross-appellant Blue Sky West, LLC

Aaron M. Frey, Attorney General, and Thomas A. Knowlton, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellees Department of Administrative and Financial Services and Maine Revenue Services

Kennebec County Superior Court docket number CV-2017-96
FOR CLERK REFERENCE ONLY